### STEWART VS. DAVIS.

1. SUNDAY CONTRACT: *By livery stable keeper.*
    A contract by a livery stable keeper to hire a horse on Sunday, for purposes of business or pleasure, is void; otherwise, if it is for purposes of charity or necessity, etc.

2. BAILMENT:
    Although a contract made for the hire of a horse on Sunday is void, the hirer will be liable in tort for any injury accruing to the horse from misuse or carelessness, and will be held to the highest degree of care.

3. ————.
    One who hires a horse for a definite time, and continues to use him after the time has expired, is liable for any injury that may accrue to the horse.

APPEAL from *Pulaski* Circuit Court.

Hon. J. J. CLENDENIN, Circuit Judge.

*Clark & Williams,* for appellant.

*Dodge & Johnson, contra.*

WALKER, J. :

This is an action brought by Davis, to recover the value of a horse hired by him to Stewart.

The pleadings and the evidence present the following state of facts.

Davis, a livery stable keeper in the city of Little Rock, on the 8th of June, 1873 (the day being Sunday), at the instance of Stewart, hired to him a horse to ride to one Steele's, about fifteen miles, and Stewart executed the following receipt :

"LITTLE ROCK, June 8th, 1873.

"Received of W. S. Davis one sorrel horse, to be returned in good order this evening, for which I hold myself responsible.

[Signed]          -          "BAYLOR R. STEWART."

Stewart rode the horse to Steele's, stayed there that night, and on the next day, rode the horse deer hunting, and that evening, on his return to Little Rock, the horse was taken sick, was returned to Davis in that condition, and soon after died. Davis demanded the value of the horse, which Stewart refused to pay, and Davis brought suit for the value of the horse.

The answer of Stewart admits the hiring of the horse, raises no question as to the validity of the contract, admits that the horse was not returned until Monday ; says that the signing the receipt and the promise to return the horse the same day, was, according to custom, not expected to be complied with strictly, but the borrower was at liberty to extend the time for returning the horse by paying an additional compensation : admits riding the horse in the deer hunt ; denies all mistreatment ; avers the horse was used in moderation, and properly fed and cared for.

The proof is that the horse was sound and in health when delivered to Stewart, was not subject to sickness, and that he was returned in a dying condition, with a disease which could only have been produced by improper feeding, drink or use.

Stewart proved by a witness that the horse was properly fed, and not rode immoderately in the deer chase.

When the horse was returned, Stewart requested Davis' agent to do all he could for him, and " he (defendant) would make it all right."

The witnesses estimated the value of the horse at from $100 to $250.

The jury found a verdict for plaintiff for $200.

Defendant moved for a new trial, which was overruled, and he appealed.

The first question presented for our consideration, is the validity of the contract of hire.

It was held by this court, in the case of *Tucker* v. *West and Mack*, 29 Ark., 386, that a note executed for a balance due for land on Sunday, was such labor as is prohibited under the statute, and that the note was void. The opinion was delivered after a careful examination of authorities, and may be considered as settling the question, so far as notes executed in ordinary business transactions are concerned.

But the contract was made, in this instance, with a livery stable keeper, for the hire of a horse. He is licensed to keep accommodations, to take care of and feed horses, and, when called upon, to furnish transportation to travelers, and others who may apply. Like the hotel keeper, he keeps open doors, and is at all times, from necessity, required (to some extent) to furnish accommodations to those who call on him. Besides the transient travel, he is expected to furnish carriages and horses to the inhabitants of a crowded city, where but few private conveyances are kept.

It is necessary and proper that both he and the hotel keeper should, as far as they can, abstain on Sunday from all employment not strictly necessary in the discharge of their duties, respectively. For livery a stable keeper to furnish a carriage to ride

to church, to attend a burial, to visit the sick, or to give exercise to an invalid, or even necessary recreation for health, can scarcely be considered prohibited labor ; certainly it is not considered such, if taken in a private carriage, and there would seem to be no good reason for holding it such when taken in a hired carriage, and, if not, the contract to hire cannot be considered more prohibited "labor" than the use of the carriage hired.

Whether the call is made for a conveyance to be used for purposes of necessity, comfort or charity, or for purposes of ordinary business or pleasure, must be determined by the livery stable keeper from information and inquiry as to the use to be made of the conveyance, and necessarily imposes the necessity of discriminating between such as are, or not, within the meaning and spirit of the exceptions.    We find such distinctions taken in several cases which commend themselves as being proper.

Thus, in the case of *Burrell* v. *Smith*, 2 Miles, 402, a contract made with a livery stable keeper on Sunday, for the hire of a horse to be used for purposes of pleasure was held to be void. In *Whelden* v. *Chapell*, 8 R. I., 230, a livery stable keeper, in the ordinary course of his business, hired a horse on Sunday for a purpose not of necessity or charity.    The contract was held to be void.

In *Gregg* v. *Wyman*, 4 Cush., 322, a horse was hired on Sunday and injured, the defense was, that the hiring was for a trip of pleasure, the contract was held to be void.

In each of the above cases the fact that the hiring was for a trip of pleasure is referred to as settling the question that the contract was void.    And this is more clearly shown in the case of *Logan* v. *Matthews*, 6 Penn. S. R., 417, in which the contract for hire was made on Sunday, by a son, to be used in visiting his father.    Coulter, J., when commenting upon an instruction given to the jury in the court below, said:    "There is nothing in the

second error assigned, the visit to his father by the defendant was in discharge of a filial duty, which nothing in the law hinders or forbids."

The horse was hired to ride to Tom Steele's place fifteen miles distant, it is in proof that the defendant led a hound dog off with him, and on the next day that he went deer driving. It is not improbable that a hunt was the real purpose of his visit; in fact, a trip of pleasure, clearly not coming within the exceptions of the statute, and was void. Suppose, however, that Stuart had hired the horse to visit his father, who was sick, and upon so stating to Davis he had hired to him the horse, we cannot believe that such hiring would have been prohibited labor under the statute.

This may serve to illustrate the rule which we think the authorities sustain, which is, that for purposes of pleasure, or for ordinary business, or travel, a contract of hire, if made on Sunday, should be held as void, if otherwise, valid.

The business of livery stable keeper, like that of a hotel keeper, is a matter of necessary accommodation to the public, the rules applicable to the one, are in many respects also applicable to the other. As a daily business they keep open doors for public accommodation, one affords shelter and food for the traveler, and others who may call; the other shelter and food for the traveler's and the citizen's horse, this service is required at all times, including the Sabbath. The hotel keeper hires or lets his rooms; the livery man his horses and carriages; both are expected in their respective spheres to meet a public necessity. Should it become necessary on the Sabbath to afford such accommodation, it becomes a question of fact whether the service is a necessary and proper service, or otherwise; both of them should so conduct their business, as far as may be, to lessen the toil of the Sabbath, and to bring it within proper limits—such as are

indispensably necessary in their respective calling, not for purposes of amusement, for these are not necessary to comfort, or charity, but such as are necessary for comfort.

The hire of the horse by Stewart was, no doubt, a hire for a business trip, or the pleasure of the chase—possibly both. It was such employment as Davis should not have engaged in on that day, and we must hold the contract void; no action could be sustained upon it.

This disposes of the case so far as the contract and the rights of the parties under it are concerned.

The action in this case is, however, not founded upon the contract, but upon the wrongful conversion of the horse by misuse and abuse.

The complaint is drawn in the Code form, and presents a cause of action in rather a confused manner.

Reference is made in the pleadings to the contract of hire, but most clearly the action is not upon the contract, but for the loss and destruction of property bailed.

It is alleged that the property came into the possession of defendant for hire, but whether for hire or as a loan is of no importance.

The misuse, or destruction of the property, was a conversion for which the owner might maintain an action, irrespective of the contract.

The case of *Frost & Plumb* is directly in point, and is reported in 13 American Law Register, 537, as well as that of *Hall* v. *Cochran*, 107 Mass., 251.

In the latter case the defendant hired a horse and sleigh on Sunday to drive to North Adams for pleasure (the purpose of hire was known to the hirer), after reaching North Adams, defendant drove to Clarksburg, and on his way back the horse and sleigh were injured.

Stewart vs. Davis.

When considering the·liability of the defendant and the proper form of action, Gray, J., said: "It appears to be clear upon principle and authority that an action of tort for the conversion of the horse and sleigh, by driving beyond the place agreed upon in the illegal contract of hiring, is not founded on the contract, and we think it equally clear that the contract need not be shown by the plaintiff, and forms no part of his cause of action."

In the case of *Frost* v. *Plumb*, the action was trover for the recovery of the value of a horse, hired on Sunday to be driven from Waterbury to Southington, but which was driven ten miles further, from the effects of which the horse died. · It was objected by the defendant that the contract to hire was made on Sunday and was void, and that the action could not be maintained.

·When considering this objection, Carpenter, J., said: "We understand the rule to be this: The plaintiff cannot recover whenever it is necessary for him to prove, as a part of his cause of action, his own illegal contract, or other illegal transactions, but if he can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear and may be important, even as explanatory of other facts in the case, he may recover.

"It is sufficient if his cause of action is not essentially founded upon something which is illegal; if it is, whatever may be the form of action he cannot recover. It was only necessary for the plaintiff to prove his own title to the property, and a conversion by the defendant. The destruction of the horse was a conversion, and proof that the injury which caused his death accrued whilst being driven without the consent of the owner, shows a complete cause of action, without any reference to an illegal contract. The illegal hiring may, or not, appear; if it does, it

simply explains the defendant's possession, and proves that it was by the owner's permission, at least for a certain purpose. It may give the defendant an opportunity to injure the horse, but it does not cause the injury; nor does it contribute to it, in such a sense as to make the plaintiff a party to the wrongful act.

"Before the defendant can avail himself of it as a defense, it becomes necessary for him to prove the illegal contract to which he is a party, and his own illegal conduct in traveling on the Sabbath; but he can no more avail himself of that as a defense, than the plaintiff can as a cause of action. Either party whose success depends upon his proving his own violation of law, must fail."

In the case of *Gregg* v. *Wyman*, 4 Cush., 322, the facts were that defendant hired a horse on Sunday to go to a certain place, but extended his ride beyond it; in consequence of the drive the horse died; the defense was that the contract made on Sunday was not binding upon him.

The court held, that no recovery could be had upon the contract; yet, if the horse was hired to go to a particular place, and was driven further, or to a different place, by reason of which the plaintiff's horse was injured and died, plaintiff could recover.

In the case of *Homer* v. *Thwing*, 3 Pick., 492, a minor hired a horse to drive to Punch Bowl, but drove to Fresh Pond. The horse was returned injured. Plaintiff sued in trover; defendant pleaded his infancy; the court commented upon the fact that the horse was driven to a different place from that agreed upon.

Morton, J., said: But in the case at bar, the driving of the horse beyond that to which defendant had permission to go, was a conversion, and trover the proper remedy.

In the case of *Wheelock* v. *Wheelwright*, 5 Mass., 103, Parsons, Ch. J., said: The defendant, by riding the horse beyond the

place to which he had liberty to go, is amenable in trover; unauthorized use of the horse was a conversion.

These decisions meet our approval, and in principle have a direct application to the case under consideration.

The action is brought under the Code form of pleading, and sets out the whole transaction, and is substantially an action for damages for the abuse and misuse of a horse received by the defendant as a bailee without hire. There was no valid contract for hire, and no reference to it need have been made, or if made, was not the basis of the action, but might be used to show how and upon what terms the horse came to the possession of the defendant; terms fixed and understood, though not binding, as a contract, and not to be varied by custom as to the time or terms of use.

The possession was, in its nature, a gratuitous loan, a use without compensation, and imposed a stricter observance of the terms of use than a bailment for a compensation to the party hiring.

Story, in his work on Bailments, says: "The rights of borrower are strictly confined to the use actually or impliedly agreed upon ; the borrower, by any excess, will make himself responsible if the property is destroyed." Secs. 227–232.

It is a conceded fact in the case under consideration, that the time of use was prolonged, and the use on Monday different from that understood and agreed upon by the parties. It was during this prolonged and changed use that the horse was taken sick, from the effects of which he died ; such continued and varied use from that agreed upon was a conversion, and fixed the liability of the defendant for all the consequences which followed.

In the several instructions given by the court, an undue importance seems to have been given to the terms, and obligatory force of the agreement; it was treated as a valid contract, one

binding upon the parties; in fact, that the said suit was brought upon the contract; to this extent the court was in error.

The suit was not founded upon the contract, but upon a wrongful use and conversion of property; it was a suit for damages for the conversion of the horse, and when the instructions given are applied to the case made by the pleadings and the evidence, they are substantially correct.

The second instruction asked by plaintiff, and given by the court, contains the substance of the several instructions, which is as follows:

"If the jury find that the defendant hired said horse as stated by plaintiff, for use during one day, and that he retained the same for the period of two days without plaintiff's consent, and upon the second day, said horse contracted a disease, or sickness, from which he died, they will find for plaintiff."

We think this instruction correct, and all the more so because there was no contract for hire.

The first instruction limits the time of the return to the day agreed upon, but as there was no question but that the horse was kept two days, and that it was on the evening of the second day that he became sick, it could not have influenced the finding of the jury.

The third was like the second, with the difference that it referred to the change of use to deer hunting.

The fourth instruction had relation to the burden of proof, and had no material bearing upon the case as made by the evidence.

The fifth was overruled, and not made ground of error, and the sixth is like the second, which we have held was properly given.

The first, second and third instructions asked by defendant, and refused by the court, relate to bailment for hire under

contract, and were properly refused, from the view which we have already taken of the case.

The fourth instruction is as follows: "If the jury believe the defendant took such care as a prudent man would of his own property, then he is not liable, except for hire."

This instruction was properly overruled, not being a contract for hire, more than ordinary care was required, and, moreover, the continued use of the horse, and the different use made of him from that agreed upon, fixed the liability of defendant; it was, in effect, a warranty against injury.

The defendant's fifth instruction is as follows:

"If the written contract given in evidence was made on Sunday, the jury will disregard the contract entirely, and find as upon an implied contract for the use of the horse for such time as he was used, not on Sunday.

This instruction was properly overruled, because, as we have held, it is not every contract for hire made by a livery stable keeper that is void; and that part of the instruction which limits recovery for the hire of the horse to one day is palpably erroneous.

The verdict is well sustained by the evidence, and the motion for a new trial properly overruled.

Let the judgment be affirmed.