THE CITY OF KANSAS CITY v. ANNIE ORR, *as Administratrix, etc.*

No. 11,626.  (61 Pac. 397.)

1. CITIES—*Defective Streets.* It is the duty of a city to keep its streets reasonably safe and convenient for all those who rightfully use them or who have occasion to pass over them for purposes of business, convenience, or pleasure.

2. ——— *Injury to Railway Employee.* Where a railway is built upon a street by authority of a city, and a railway employee in the performance of his ordinary duties walks over the street, and is injured by reason of a defect in the street of which the city has or should have knowledge, the city is liable for the injuries sustained.

3. —— *Contract with Railway Company Immaterial.* The fact that it may have been the duty of the railway company under its contract with the city to construct and keep its tracks in a suitable and safe condition for those who have occasion to pass over the streets does not discharge the city from its duty to the public to keep its streets in a reasonably safe condition, nor relieve it from liability for the consequences of its negligence in that respect.

4. —— *Injury to Violator of Sunday Law.* The fact that one who sustains injury by reason of the negligence or wrongful act of another may have been at the time of the injury acting in disobedience of his collateral obligation to the state, which required of him the observance of the Sunday law, will not prevent a recovery from one whose wrongful or negligent act or omission was the proximate cause of the injury.

5. —— *No Error Found.* The record examined, and *held*, that the case was fairly submitted to the jury, and that there was sufficient testimony to sustain the verdict and judgment.

Error from Wyandotte court of common pleas; W. G. HOLT, judge. Opinion filed June 9, 1900. Affirmed.

*T. A. Pollock*, and *F. D. Hutchings*, for plaintiff in error.

*Angevine & Cubbison*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action by Annie Orr, administratrix of the estate of J. W. Orr, deceased, to recover damages for the death of her husband, J. W. Orr, alleged to have resulted from the negligence of the city. J. W. Orr, a switchman in the employ of the Chicago Great Western Railway Company, was killed on November 7, 1897, at the intersection of Central avenue and Wood street, in Kansas City. Central avenue, which runs east and west, is a paved and much-traveled street, and Wood street, which runs north and south, is occupied at this point by two

tracks of the Kansas City & Northwestern Railroad
Company, which are also used by the Chicago Great
Western Railway Company, the employer of Orr.
The intersection of the streets is planked between the
tracks and also between the rails of the tracks with
planks which are about four inches thick.   One of
the planks inside of the rail was placed from three
and one-half to four and one-half inches from the rail,
leaving an opening about four inches deep.   Space is
required for the flanges of the car-wheels, but the
opening left is alleged to have been unnecessarily
wide, and further, that the street had been left in that
dangerous condition for more than thirty days prior
to the accident.   In the early morning of the day
mentioned, a train of cars was slowly backed along
Wood street and over Central avenue.   Orr was walk-
ing beside the train, and at the intersection it became
necessary for him to uncouple the cars, and it is al-
leged that for that purpose he went between the cars,
stepped into the hole negligently left by the city, and
his foot wedged therein so that he was thrown down
and crushed by the wheels of the cars and killed.

The defense of the city was that it was not required
to keep the streets in a reasonably safe condition for
the use of switchmen and other railway employees
passing along or over the streets ; and further, that
it was not liable for injuries suffered by such persons
while engaged in such occupations upon the streets.
The answer also included an averment that the injury
was the result of contributory negligence.   Special
findings of fact were made by the jury, which were to
the effect that while the train was backing over Cen-
tral avenue, at the rate of three miles per hour, Orr
went between the cars to uncouple them, stepped in
the hole mentioned, which held his foot so that he

could not withdraw it, and he was therefore thrown down and run over by the cars. There was a further finding that the space left for the flange of the wheels at the point of the accident was wider than is usually left for that purpose, and that it had remained in the same condition for more than thirty days prior to the accident. The general verdict was against the city, and the damages were assessed at the sum of $5000.

The main contention of the city is that the only duty which it owes to the public with respect to streets is to keep them in a reasonably safe condition for the ordinary purposes of travel; that Orr was not making such use of the streets when he was injured; that he was not a traveler in the legal sense, and therefore no liability could arise against it for injuries sustained by him on ac-· count of defective streets. Cases of our own and other courts are cited in which it is said, in substance, that it is the duty of the city to keep its streets in a reasonably safe and suitable condition for travel in the usual modes, or for the travel that usually passes over them (*Jansen v. Atchison*, 16 Kan. 358; *City of Wellington v. Gregson*, 31 id. 99, 1 Pac. 253; *City of Emporia v. Schmidling*, 33 id. 485, 6 Pac. 893), and it is argued from these that Orr was not using the street for ordinary travel. The cases referred to do not undertake to define the term "traveler," nor do they decide what are the usual modes of travel or the legitimate uses to which the streets may be put. In most of the cases the purpose of the court was to show that the law does not require the streets to be so maintained as to secure absolute immunity from danger in using them, and that the limit of the duty of the city was to keep them in such a condition that persons entitled to the

1. Care of streets— duty of city.

Kansas City v. Orr.

use of the streets could pass over or along them with reasonable safety and convenience.

The fact that Orr was a railway employee and engaged in the performance of his duties upon the street when he was injured did not, we think, exclude him from the protection of the law or relieve the city from liability for injuries to him resulting from its negligence. The corporate duty of the city is to keep the streets reasonably safe and convenient for all those who rightfully use them and who have occasion to pass over them for purposes of business, convenience, or pleasure. The railway was placed in the street with the consent and by the authority of the city ; it was one of the ordinary uses to which that street was put, and the employees of the company, while engaged in the performance of their duties, were required to pass along and over the street. While so engaged, they were not travelers, in a technical sense, but they were making an appropriate and legitimate use of the street, and one which was within the contemplation of the city when the right to such use was granted. In determining the duty and liability of the city, the terms "travel" and "traveler" are not to be given a narrow and restricted meaning, but should be held to embrace such legitimate uses as may be made by persons having occasion to pass over them while engaged in any of the duties of life, and persons using the street as Orr was when the injury was sustained. Orr was rightfully in the street; his duties required him to pass along and over it, and he was as much entitled to a safe and convenient place to walk there as the conductor of a street-car, the driver of a dray, or other person engaged in his ordinary business. A city is not required to prepare and maintain its streets for unusual and extraordinary uses, such as

**2. Injury to railway employee.**

the moving of heavy buildings or the traveling over the streets with stilts, but the use made of the street by Orr was neither unusual nor extraordinary. It was just such use as was made of the street frequently every day, and which the city must have had in contemplation when the right to such use was conferred.

The fact that it may have been the duty of the railway company under its contract with the city to construct and keep its tracks in a suitable

3. Contract with railway company.

and safe condition for those who have occasion to pass over the street did not discharge the city from its duty to the public to keep the street in repair, nor relieve it from liability for the consequences of its negligence in that respect. (*Street Rly. Co. v. Stone*, 54 Kan. 83, 37 Pac. 1012.)

Our conclusion is that it was the duty of the city to keep the streets in a reasonably safe condition for the use of Orr or any one else who had occasion to pass over the streets while engaged in any of the ordinary pursuits or duties of life. (*Fletcher v. City of Ellsworth*, 53 Kan. 751, 37 Pac. 115; *Kansas City v. Hart*, 60 id. 684, 57 Pac. 938; *Duffy v. Dubuque*, 63 Iowa, 171, 18 N. W. 900; *McGarry v. Loomis et al.*, 63 N. Y. 104; *Rehberg v. Mayor etc. of City of New York*, 91 N. Y. 137; *McGuire v. Spence*, id. 303; *Parker v. The Mayor and Council of Macon*, 39 Ga. 725; *Grogan v. The Broadway Foundry Company*, 87 Mo. 321.)

An objection is made to a recovery because of an alleged violation of the Sunday law. The accident

4. Violation of Sunday law.

occurred on Sunday morning. The statute forbids all labor on that day except works of necessity and charity. Orr was at work as a switchman, and assisting in the operation of a railway-train, when he was injured and killed, and the city, assuming the position of a champion of the Sun-

Kansas City v. Orr.

day law, insists that it is not liable for its own negligent acts because Orr was a transgressor of the law. The operation of a railway-train or other public conveyance may be a work of necessity, and there is nothing in the record to show that the operation of the train on this occasion was not a work of necessity. Aside from that consideration, the violation of the Sunday law, if in fact it was violated, was not the efficient or proximate cause of the injury to the plaintiff, nor an essential element of her cause of action. The general rule is that a plaintiff will not be permitted to recover when it is necessary for him to prove his own illegal act or contract as a part of his cause of action; but the time when the injury occurred does not constitute the foundation of the action, and plaintiff could prove her cause of action without proving that her husband was violating the law when the injury occurred. The time when the injury was inflicted is only an incident to the efficient cause of the injury. The injury occurred by reason of the defect in the street, and was as liable to have occurred under similar circumstances on Saturday or Monday as it did on Sunday. There was not even a remote relation between the violation of the Sunday law and the injury which resulted from the negligence of the city in maintaining its streets in a proper condition.

In *The Louisville, New Albany & Chicago Railway Co. v. Frawley*, 110 Ind. 30, 9 N. E. 600, it was said:

"The fact that one who sustains an injury by the negligent or wrongful act of another, may have been, at the time of such injury acting in disobedience of his collateral obligation to the state, which required of him the observance of the Sunday laws, will not prevent a recovery from one whose wrongful or negligent act or omission was the proximate cause of such

injury." (See, also, *Sutton v. Town of Wauwatosa,* 29 Wis. 21; *Louisville, New Albany & Chicago Ry. Co. v. Buck, Adm'r,* 116 Ind. 566, 19 N. E. 453; *Phila. Wil. & Balt. R. Co. v. Phil. & Havre de Grace Steam Towboat Co.,* 23 How. 209, 14 L. Ed. 433; *Mohney v. Cook,* 26 Pa. St. 342; *Baldwin v. Barney,* 12 R. I. 392; *Merritt v. Earle,* 29 N. Y. 115; *Carroll v. Ry. Co.,* 58 N. Y. 126; *Platz v. The City of Cohoes,* 89 N. Y. 219; *Schmid v. Humphrey,* 48 Iowa, 652; *Opsahl v. Judd,* 30 Minn. 126, 14 N. W. 575; *Illinois Central Railroad Company v. Dick,* 91 Ky. 434, 15 S. W. 665; *Black v. City of Lewiston,* 2 Idaho, 254, 13 Pac. 80; *Gross v. Miller,* 93 Iowa, 72, 61 N. W. 385; *Solarz v. Manhattan Ry. Co.,* 29 N. Y. Supp. 1123; *Stewart v. Davis,* 31 Ark. 518; *Van Auken v. Railway Co.,* 55 N. W. 971; Patterson, Rly. Acc. L. 64; Cooley, Torts, 178; Whart. Neg. § 331; Beach, Cont. Neg. § 81.)

It is true that some of the New England courts hold to a contrary view, but such holding is against reason and the great weight of authority.

We think the case was fairly submitted to the jury by the charge of the court. There is complaint that the court assumed that the defect in the street was an act of negligence on the part of the city because of some language that was used in one of the instructions, but it appears that like language was used by the city in its request for instructions; and hence the city is hardly in a position to complain. However, the whole charge indicates that the question of whether it was negligence to leave such a hole in the street as existed there was submitted to the jury, and must have been so understood by the jury. The charge also fairly presented the subject of proximate and efficient cause as applied to the accident under consideration, and we find no substantial objections to any of the instructions.

No error was committed in the refusal to submit

Case v. Lanyon.

certain special questions, and we think there was sufficient testimony tending to show that the injury and death were the result of the defect in the street. Upon this question the testimony is not as clear as might have been wished, but we regard it to be sufficient to take the case to the jury and to sustain the finding that has been made. It follows that the judgment of the court below must be affirmed.