ARKANSAS & LOUISIANA RAILWAY COMPANY v. LEE.

Opinion delivered July 2, 1906.

1. TELEGRAPH COMPANIES—DAMAGES FOR MENTAL ANGUISH.—Under Kirby's Digest, § 7947, providing that "all telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages," a cause of action arises in this State where negligence occurred in transmitting a message from a point in this State to a point in another State. (Page 451.)

2. SAME—ACCEPTANCE OF MESSAGE FOR DELIVERY.—Delivery of a telegraphic message to the operator's assistant, who was in charge of the office, and received the message for transmission and accepted the toll therefor, was sufficient to bind the telegraph company to transmit the message. (Page 453.)

3. SAME—SUNDAY LAW.—Where a telegraph company received a message for transmission on Sunday, a cause of action for failure to receive, transmit or deliver such message is based not on contract but on the statute (Kirby's Digest, § 7947), and it is no defense that the contract was entered into on a Sunday. (Page 453.)

Appeal from Howard Circuit Court; James S. Steel. Judge; affirmed.

STATEMENT BY THE COURT.

On Sunday, January 17, 1904, the following message to John W. Lee was delivered to an agent of the Arkansas & Louisiana Railway Company, hereinafter referred to as the railway company, reading as follows:

"Pa died last night. Wire me what time you can reach here.
                                            "W. D. LEE."

The railway company does a telegraph business for hire. It has a line of railroad and telegraph from Nashville to Hope, and at Hope the operator is common to the railroad company and the Western Union Telegraph Company, to which company the railroad company delivers all messages going beyond Hope. Meadows was station agent and telegraph operator at Nashville. O. N. Lee was station clerk under Meadows, but was not an operator. John W. Lee is a brother of W. D. Lee. Taking the evidence most favorable to support the verdict, these are the estab-

lished facts of the case: The message was delivered to O. N. Lee about 8:30 a. m. Sunday. O. N. Lee said the operator was not there, but would be there in about an hour, and he received the message and placed it on the operator's hook for transmission. The Sunday hours at Nashville were a few minutes before and after the arrival and departure of the trains. The train left at 8:30 a. m. and returned on Sunday at 6:30; on week days days there was another train reaching Nashville at about 1 p. m. O. N. Lee was at the station and in charge thereof from 8 o'clock until ten or fifteen minutes after the train left, and the operator had not appeared up to that time. The operator had sat up late the night before, and was asleep in a hotel across the street from the station at this time. W. D. Lee heard that his message had not been transmitted, and went to the station about 11 o'clock, and the operator was not there, but O. N. Lee told him it had been transmitted within ten minutes of its receipt. This statement was denied by O. N. Lee, but he does not deny the absence of the operator at the time of W. D. Lee's visit. The Nashville operator testifies that he reached the station between 9:30 and 10, and at once tried to raise the Hope operator, but could not until about 11 o'clock. The Hope operator says that Nashville did not call that office between 9:30 and 10; and that 10 o'clock was closing time there, but, owing to the nature of the message, it was received when sent by the Nashville office, at 10:57 a. m. The joint agent at Hope received the message at 10:57, and it was received at Shreveport, La., at 11:50. The time required for transmission from Hope to Shreveport is about one minute. At Shreveport it was delayed until 3:25, when it was received at Leesville from Shreveport. The reason for this delay was that the operators were usually given from 11:30 to 3 o'clock, by the dispatchers on Sundays.

The operator at Leesville ascertained that John W. Lee had left town, and he located him over long distance telephone, and gave him the message a few minutes after its receipt by him. John W. Lee started for Nashville on the first train after receiving the message, and telephoned from Shreveport to his brother that he had started, and would get to Nashville as soon as possible. He got to Nashville at 6:30 p. m. Monday. His father had been buried that afternoon. Had he received the telegram

any time prior to 1:20 p. m. Sunday, he would have reached Nashville no later than 1 P. M. on Monday, in time for his father's funeral. He sent no communication after notifying his brother from Shreveport that he was on the way. John W. Lee sued both companies, and recovered a verdict for $300 against them jointly, and the companies have appealed.

*W. C. Rodgers* and *B. S. Johnson,* for appellant railway company.

1. Appellee is a resident and citizen of Louisiana. The message was for delivery to him in that State. He can not maintain an action under the mental anguish statute. 97 Ala. 126; 10 Lea (Tenn.), 352; 60 Miss. 977; 33 Kan. 83; 89 Tenn. 235; 143 Mass. 301; 61 Kan. 667; 70 N. H. 5; 85 Fed. 943; 74 Miss. 782; 95 Ala. 337; 113 Ala. 402; 50 Ark. 155; 67 Ark. 295; *Western Union Telegraph Co.* v. *Ford,* 77 Ark. 531. Whatever is a defense to an action of this kind in the State where the cause of action accrued is a defense in the State of the forum. 68 N. H. 382; 66 Ill. App. 173.

2. There is no proof of negligence on the part of appellant railway company. Its line extends no further than Hope, Ark., and it is in proof that its agent forwarded the message as soon as he could get the Western Union at that point.

3. There ought to be no recovery against the railway company because the message was not given to the operator, but to a station clerk who knew nothing of the telegraph business, and who informed the sender that the operator was not in the office. No request was made to call the operator, nor did the sender do so herself, which she could easily have done by telephone. 36 Ark. 371; 48 Ark. 106; 76 Ark. 356; 3 Cliff. (U. S. C. C.), 184; 3 Houst. (Del.), 233; 12 Fed. Cas. No. 6914; 105 Iowa, 335; 170 Ill. 645; 84 Tenn. 161; 83 Pa. St. 22. The railway company is under no legal duty to know the office hours of the various offices of the Western Union, neither is it responsible for delay in transmission of messages caused thereby. 103 Ind. 505; 24 Fed. 119; 31 S. W. 211; 66 S. W. 17; Crosswell, Electricity, § § 421, 422; 97 Ga. 338; 31 S. W. 210; 43 S. W. 1058; 66 S. W. 292.

4. The jury were entitled to an instruction as to whether

or not the Sunday hours of appellant railway at Nashville were reasonable. 73 Ark. 205; 107 Ky. 600.

5. The contract, having been made on Sunday, is void.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant Western Union Telegraph Co.

The telegraph company exercised diligence in forwarding the message. Its Sunday hours were reasonable, and the message reached Shreveport without unreasonable delay. If there was any negligence, it occurred in Louisiana, where no recovery can be had for mental anguish.

*W. D. Lee* and *Feazel & Bishop,* for appellee.

1. The law of the place where the contract is made determines the rights and liabilities of the parties. It enters into and becomes a part of the contract. 25 Ark. 261; 40 Ark. 423; 135 Mo. 661; 5 Ind. App. 89; 63 Minn. 196; 100 Va. 459.

2. There was evidence of negligence on the part of the railway company, and the jury's verdict on that point is conclusive.

3. The sender had no authority over the absent operator, owed no duty to call him nor to request that he be called. That duty was on the station clerk.

4. Appellants are not relieved on the ground that the transactions occurred on Sunday. The statute fixes the liability for the breach of duty to the public as common carriers of messages. 70 Am. St. Rep. 205; 30 Am. St. Rep. 23.

HILL, C. J., (after stating the facts.) 1. It is argued that the "mental anguish" statute does not reach to this case; that there was a contract to deliver the message in Louisiana; that a failure to promptly deliver in Louisiana was the cause of action, and this statute was not in force there, and hence from a failure to obey it without the State no cause of action arose. The facts do not support the argument.

The statute in question predicates the action on "negligence in receiving, transmitting or delivering messages." Kirby's Digest, § 7947. If this action was based on negligence in the delivery of the message, it would have to be dismissed for want of evidence to sustain it. The undisputed facts in that regard are: The message was received at Shreveport, La., from Hope, Ark., at 11:50 A. M.; that the Sunday rest hours began at 11:30

A. M. and extended to 3 P. M.; that this was a reasonable regulation has not and can not be gainsaid; that the message was received at Leesville from Shreveport at 3.:25 P. M.; that the train which Mr. Lee would have taken, had he received the message in time, left Leesville at 1:20 P. M.; that the operator promptly ascertained Mr. Lee's whereabouts in another town, to which he had gone on train leaving Leesville at 1:20, and delivered the message over long distance telephone, and this promptness and kindness of the operator enabled him to catch the next train. The Western Union received the message at Hope, Ark., at 10:57, and, while it required only one minute to transmit it, yet it failed to reach Shreveport until 11:50. Although called upon for an explanation, the operator is unable to account for this delay. Had the Hope operator promptly transmitted the message, it is clear that it would have reached Shreveport before 11:30, the beginning of the Sunday rest hours, and would have reached Mr. Lee in ample time to have enabled him to have attended his father's funeral. The only evidence of negligence against the Western Union, and there is this substantial negligence against it, occurred in transmitting from Hope to Shreveport. The evidence leaves but little doubt that the operator at Nashville did not come to his office until near eleven o'clock, although the Sunday office hours were between eight and nine o'clock, and the message was delivered to the station clerk in charge of the office within those hours. Hence the railway company's negligence was in transmitting from Nashville to Hope. In *W. U. Tel. Co.* v. *Ford,* 77 Ark. 531, this court recently decided where a message was sent from Missouri into Arkansas, and there was negligence in failing to deliver in Arkansas, that the cause of action arose in Arkansas, and this statute was applicable. That case is controlling here. The negligence was not in the delivery in Louisiana, but in the transmission in Arkansas, and therefore the cause of action arose in Arkansas, and the statute applies.

2. The next argument presented is that there was no proof of negligence against the railway company in sending the message. The discussion of the preceding proposition develops the opinion of the court that there was abundant evidence, in fact, practically undisputed evidence, of great negligence in both the

Nashville and Hope operators. The jury could not well have returned a verdict other than the one they did return, so far as the question of negligence is concerned.

3. It is insisted that there should be no recovery because the message was delivered to the station clerk, who informed the sender that the operator would not be there for an hour. The station clerk was assistant to the agent, who was also operator; he was in charge of the office, and received the message for transmission, and accepted the toll therefor. A statement of these facts is sufficient to answer this argument.

4. It is insisted that because the message was sent on Sunday there can be no recovery, on the theory that a contract made on Sunday is void, and no cause of action can grow out of it. If the company had refused to receive the message because it was Sunday, and it would not compel its employees to labor on the Sabbath, or if this action was based on a contract, then the company could raise the question it desires to raise herein; but that question can not enter into this case because the action is purely on the statute, and the action created by the statute is for negligence in receiving, transmitting and delivering a telegram. When a message is received for transmission by the proper agents of the telegraph company, for negligence in these particulars aforesaid a cause of action is created, and it is upon that cause of action, and not any contractual rights, that this action is predicated.

Other questions have been presented in argument, and have been fully considered; but, as they present no questions of law applicable to the facts, a discussion of them would not be profitable.

Judgment is affirmed.