ARMOUR & COMPANY *v.* ROSE.

Opinion delivered March 9, 1931.

414

*George R. Herr* and *Hill, Fitzhugh & Brizzolara,* for appellant.

*Hardin & Barton,* for appellee.

MEHAFFY, J. The appellant, Armour & Company, is engaged in the business of selling meats, refrigerator products, ammonia, compound lards, canned meats, pork and beans, pharmaceutical products, cheese and other products at their branch office at Fort Smith, Arkansas, and T. H. McKay was manager from 1925 to and including the date of the accident to appellee September 30, 1928.

On September 30, 1928, about 11 o'clock in the forenoon the appellee fell into an open, unguarded elevator shaft in the place of business of Armour & Company in Forth Smith, receiving serious and permanent injuries.

This action was brought against Armour & Company and Clarence Fine, its employee, for damages sustained by reason of his fall into the elevator.

It is alleged that appellant's negligence caused the injuries. Appellee was 44 years old and had operated a shoe repair shop in Fort Smith for about 20 years and

was making about $300 per month in the operation of his business.

Appellant, Fine, was a traveling salesman, but was at the place of business of Armour & Company on Saturdays and Sundays. Appellee had been in the habit for seven or eight years prior to the accident of buying meat products from the Armour place on Sundays and other days of the week from Fine and other employees.

The manager of the Fort Smith branch had been instructed by his superiors to sell only to wholesalers, retail dealers in its supplies, hotels and large restaurants, its principal business being to sell for resale. They were permitted, however, to sell to the employees of appellant for their own use. The manager had instructed his salesmen to rigidly enforce this rule.

On the day of the accident, appellee, with his family drove to the place of business of Armour & Company about eleven o'clock and parked his car. He got out, walked to the front door of Armour & Company's place of business; the front door was open, appellee walked into the main entrance, up to a window where Mr. Fine and two or three other employees of Armour & Company were seated in the office room. Mr. Fine asked appellee what he could do for him, and appellee replied that he wanted to get some ham and bacon. Fine got the key and went with appellee back to the cooler where they found the bacon, but failed to find the ham. Fine then suggested that they go back to the smokeroom, as there might be some hams there. They walked out of the cooler, Fine locked the door, and led the way down a long, narrow, dark passageway to the smokeroom. He opened the door, switched on the light on the inside of the smokeroom, but when they got in the smokeroom they failed to find any hams. They walked back from the smokeroom, which had double doors, Fine opened the door, and stepped back for appellee to step out. Appellee stepped out, and Fine switched off the light, and pushed the doors and was in the act of closing them. Just as appellee stepped out and stepped back to wait

for Fine, he stepped into an open elevator shaft, and fell upon the basement floor at the bottom, a distance of about fifteen feet. His hip and ankle were broken, and he was otherwise injured. The injuries are permanent.

The Armour & Company plant was not open in the regular way on Sunday, but some of the men in the office work there at times. There were two or three offices in the place, one for the manager, and another where traveling salesmen and other employees went on Sunday. The freight elevator was used to carry heavy articles. It had gates in front, and they were ordinarily closed when the elevator was not in use. There was an electric light over the opening of the elevator shaft, but this was not lighted on Sunday. The light was much dimmer in the plant on Sundays than on other days. As a rule, none of the electric lights were burning except the one in the shipping room, and lights would be turned on in the office if anyone was there on Sunday. Fine was usually in the plant on Saturday and Sunday, and occasionally made sales.

Fine and appellee had been friends for a number of years. Fine told appellee, in 1921 or 1922, that it was against the rules of the company for him to sell to appellee in the way he did, but in order to accommodate him he would do that, and while appellee continued to buy for seven or eight years, not only from Fine, but from others on Sunday, it was never suggested to him after the first time that there was any violation of the rules.

When a sale was made by Fine, tickets would be made out. According to Fine's testimony the ticket was made out against him. Appellee and others testified that the ticket was made out against appellee.

The testimony is in conflict as to whether the manager knew of the sales made by Fine, and it is also in conflict as to the number of sales made, but there is no dispute about the fact that the sales continued from time to time for seven or eight years. The evidence also shows that there was a sign displayed to the effect that no sales were made at retail.

As shown by the blue print, the passageway into which Fine and appellee walked, was eight feet wide. The door, however, through which they went, was in the middle of the room, so that when they stepped out, they were approximately four feet from the side of the passageway on which was the open shaft of the elevator. There is a conflict as to what occurred when they passed out. The appellee testified that Fine opened the door, and appellee stepped out of Fine's way, walking three or four feet, and fell into the elevator. Fine knew that the elevator was there, the appellee did not know it. Fine closed the door, turned the light out, and, as he turned around, saw appellee fall into the elevator.

The jury returned a verdict for $7,500. Judgment was entered, and, to reverse the judgment of the circuit court, this appeal is prosecuted.

The appellant contends that the primary question is: Was it negligent for the company to have its place unlighted and its elevator shaft open on Sunday when the usual activities of the plant were suspended for the day in obedience to law and its own custom?

Appellant says that no customers were expected, and that none could lawfully be received as such, and that, therefore, leaving the plant in this unlighted condition, and the elevator shaft without a guard on Sunday, is not negligence, because the company could not reasonably anticipate customers would enter there contrary to law and the rules and customs of the company.

The undisputed proof shows that the appellee had been going to the place of business for seven or eight years on Sundays to purchase articles from appellant. There is a conflict in the evidence as to how often he went. The appellee testified he went two or three times a month, but whether he had gone as often as he claimed or not, the appellant knew that the elevator was there, and that the shaft was open, and the passage was dark.

Fine himself testified that the dealings began in the summer of 1921 or 1922, and that the first time he made a

sale he told appellee that it was against the rules to sell merchandise that way, but he would get it and charge it to himself. That was seven or eight years before the accident, and Fine does not claim that he ever suggested to him after that that it was a violation of the rules. Yet they continued to sell to him on Sundays, and, when he came on the morning of the accident, the undisputed proof shows that Fine went with him to get the articles he wanted, and Fine knew about the elevator and the appellee did not. Of course, it would not be negligence for the appellant to close its place of business on Sunday and leave the elevator shaft open if no customers were expected, but they had a right to expect that the appellee would come because it had been his custom for seven or eight years.

As to the negligence of Mr. Fine, he himself said that he went to the manager's office, procured the key and went out with the appellee, the appellee following him. The passage in which they were just prior to the accident was about eight feet wide, the door through which they came was in the middle of this passageway, and, after coming through the door and getting out of Mr. Fine's way so that he could close the door, the appellee testified that he took one or two steps and went into the shaft.

Under the evidence in the case, it was a question of fact for the jury as to whether the appellants were guilty of negligence. Actionable negligence means the violation of some duty which results in injury to another, and in this case we think it a question of fact properly submitted to the jury as to whether the appellants owed the appellee any duty and whether appellee was injured because of a violation of that duty.

Appellants contend that the case should be reversed because of the contributory negligence of appellee. Appellee testifies that he was going with Mr. Fine; that he did not know there was an elevator there; that the passageway was dark; that he only took one or two steps

in getting out of the way of Mr. Fine, and fell into the elevator. The question to be determined was whether the appellee at the time acted as a man of ordinary prudence would have acted under similar circumstances, and this was also a question for the jury.

Appellee was asked how close he went to the elevator when he went in there, and he said while he could not tell exactly, it was maybe two or three feet. He did not know the elevator was there, and he could not see on the side the elevator was on. There was not any light, and when Mr. Fine turned to close the door, the appellee had to back out of his way. He had to get out of Mr. Fine's way so he could close the door. Mr. Fine walked out first and held the door open for him to walk out. He took only one or two steps and fell into the shaft.

Appellee calls attention to the case of *Murray* v. *Mc-Clain*, 57 Ill. 378, as supporting its contention that the appellee was guilty of contributory negligence, but the court said in that case: "This hatchway was located some 65 or 70 feet back from the front of the building, where were situated the office and room, where others having business with the house transacted it; and was at a place where no one, except the inmates and employees of the house had any business, and could not reasonably have been expected to be there, exposed to danger. Had the hatchway been at a place where persons were accustomed to pass and repass, or to be about, and their presence there ought to have been reasonably anticipated, a higher degree of care might have been exacted of the appellants." The court also said in that case, speaking of the injured party: "He was in the habit of bringing the kegs in a wagon to the front door. Just after the accident his wagon was found at the door with a load of kegs upon it. The deceased had not shown himself to anyone in the office and was not seen about the building prior to his fall." After his injury and before his death he stated that he knew where the hatchway was just as well as any of them knew.

In the case just quoted from the appellant knew nothing about the presence of the injured party, and had no reason to anticipate that either he or anyone else would be about the hatchway. In the instant case the appellants not only had reason to anticipate that the appellee might be there, but they knew he was there and knew of the open elevator shaft.

Appellant next calls attention to and relies on the case of *Johnson* v. *Ramberg,* 49 Minn. 341, 51 N. W. 1043. The court stated in that case: "The wareroom was lighted by a window in the front or south end, by a window over the sliding door, opposite this stairway, by the large doorway, when that door was open, and by the glazed door in the partition near the head of the stairway. In the daytime, the plaintiff, finding the sliding door in the wareroom wide open, sought to enter the store that way, as we assume he had license to do. Entering the wareroom, he passed over the partition door to pass through that into the store, but, as he says, meeting the defendant coming into the wareroom from the store, he stepped aside for him to pass, and in doing so he stepped off the head of the stairs and fell, causing the injuries for which a recovery is sought. The evidence shows conclusively, and without denial, that the room was so lighted that any one who looked about him would see the open stairway. The plaintiff admits that he could have seen it if he had looked, but that he did not look. Not only was the wareroom light, but the stairway and the cellar below were light. While the plaintiff was permitted to pass through the wareroom into the store, he could not but know from the surroundings that the place was not a passageway merely, but that it was also largely, if not principally, devoted to the private uses of the proprietor connected with his business; and the plaintiff was not justified either in closing his eyes as he went through, or in neglecting to observe where he went."

The statement from the opinion clearly shows the distinction between that case and the case at bar.

Attention is called to the case of *Shaw* v. *Goldman*, 116 Mo. App. 332, 92 S. W. 165. The court cited another case and said: "A husband and wife called upon a pork packer from whom they usually purchased meats and desired to buy a shoulder. The foreman in charge pointed out certain meats and then accompanied them into the rear of the establishment, walking immediately in front of the wife, 'who stepped into a pitfall and was injured. This court held and very properly we think, under the circumstances that neither the husband nor the wife is to be regarded as having been a trespasser or a bare licensee in the portion of the building where the open hatchway was situated,' and the recovery was sustained."

The facts in the instant case are very similar to the ones in the case mentioned in the *Shaw* v. *Goldman*, *supra*. The appellee, as was his custom, went to the place of business of the appellant to purchase meats, and Fine, the employee, accompanied him to the places where they expected to get the articles desired, walking immediately in front of him, until they reached the door which the employee opened and the appellee, in stepping out of the way, stepped into the elevator.

Appellant cites and relies on the case of *Beal-Doyle Dry Goods Co.* v. *Carr*, 85 Ark. 479, 108 S. W. 1053, 14 Ann. Cas. 48. In that case the injured party knew that the elevator was there and knew that it was open. He stated that the door of the elevator was open, but that it looked to him exactly like there was as much floor inside as out and he stepped in the hole. The injured party went to the elevator, knew that it was open, and stepped in, thinking there was a floor; it was dark. But in that case, where the injured party was going alone and saw the elevator, without any examination to see whether there was a floor, he thought there was and stepped in, the court held that it was a jury question.

The court said in the above case: "There is strong reason for finding that appellee was guilty of negligence in walking into the open elevator shaft, if it was open

as he claims; but we cannot say, as a matter of law, that he was negligent. That was a question for the jury. It is true that he might, by close investigation, have discovered that the car was not in place, and that the shaft was open, but that is not the question. Did he exercise such care for his own safety as a person of ordinary prudence would have done under like circumstances? That is what the law required of him, and all that it required; and whether or not he did that is a question of fact to be determined from all the evidence."

The above rule is well established by the decisions of this court. Wherever the evidence is such that different minds would arrive at different conclusions as to negligence or contributory negligence, it is a question for the jury.

"After all, the test is, what would an ordinarily prudent person have done under the circumstances as they then appeared to exist? Can we say that all reasonable minds would reach the conclusion that plaintiff failed to exercise due care to avoid this collision?" *Coca Cola Bottling Co.* v. *Shipp,* 174 Ark. 138, 297 S. W. 856.

We also said in that case: "The rule is, that where fair-minded men might differ honestly as to the conclusion to be drawn from the facts, either controverted or uncontroverted, the question at issue should go to the jury." *St. L. I. M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786; *Ark. P. & L. Co.* v. *Shryock,* 180 Ark. 705, 22 S. W. (2d) 380, 20 R. C. L. 169.

Wherever there is conflict in the testimony, it is the province of the jury to pass upon the weight of the evidence and the credibility of the witnesses, and, even if it appears that the verdict is contrary to the preponderance of the testimony, this furnishes no ground for reversal. *Ark. P. & L. Co.* v. *Cates,* 180 Ark. 1003, 24 S. W. (2d) 846; *Hyatt* v. *Wiggins,* 178 Ark. 1085, 13 S. W. (2d) 301; *S. W. Bell Tel. Co.* v. *McAdoo,* 178 Ark. 411, 10 S. W. (2d) 503; *Ark. P. & L. Co.* v. *Orr,* 178 Ark. 329, 11 S. W. (2d) 761; *Mo. Pac. Rd. Co.* v. *Juneau,* 178 Ark. 417, 10 S. W. (2d) 867; *Mo. Pac. Rd. Co.* v. *Edwards,* 178

Ark. 732, 14 S. W. (2d) 230; *Western Union Tel. Co.* v. *Downs,* 178 Ark. 933, 12 S. W. (2d) 887; *Wright* v. *State,* 177 Ark. 1098, 9 S. W. (2d) 233; *Turner* v. *State,* 109 Ark. 138, 158 S. W. 1072; *People's Bank* v. *Brown,* 136 Ark. 517, 203 S. W. 579; *Harris* v. *Wray,* 107 Ark. 281, 154 S. W. 499; *Gazola* v. *Savage,* 80 Ark. 249, 96 S. W. 981.

Appellants next contend that the appellee was a licensee only, and that Fine, the employee, was acting for appellee. The uncontradicted evidence shows that the appellee had been going to the place of business of appellant on Sunday for seven or eight years to purchase such articles as he needed and were sold by appellant. One who goes to the place of business of another to purchase merchandise where he had been in the habit of going in like manner for a number of years, is an invitee and not a licensee.

The court said: "According to the evidence adduced it was at the time of appellee's injury the general custom of employees to ride on the engine from their places of work to their homes. This was done by the direction of the superior agents of the company in charge at Muskogee. This custom became impliedly an element of contract between the company and its servants at that place, and appellee was entitled to the privilege as a part of his contract." *St. L. I. M. & S. Ry. Co.* v. *Barron,* 166 Ark. 641, 267 S. W. 582.

The general rule is that the owner or occupier of premises is under no duty to protect those from injury who go upon the premises as volunteers or merely with his express tacit permission from motives of curiosity or private convenience in no way connected with business or other relations with the owner or occupier. A person going on one's premises under such circumstances would be a bare licensee, and the authorities cited and relied on by appellant would be applicable to such a situation.

The rule is also well established that a licensee who goes upon the premises of another for that other's pur-

pose by that other's invitation, is no longer a bare licensee. He becomes an invitee, and the duty to take ordinary care to prevent his injury is at once raised, and for violation of that duty the owner is liable if injury results to the invitee by reason of the negligence of the owner. *Glaser* v. *Rothschild,* 221 Mo. 180, 120 S. W. 1, 22 L. R. A. (N. S.) 1045; 45 C. J. 814; *Midland Valley Rd. Co.* v. *Littlejohn,* 44 Okla. 8, 143 Pac. 1.

There is a well-defined distinction between a mere licensee and an invitee. One who goes on another's premises for the purpose of purchasing goods which the other has for sale, and especially where this has been done for a number of years, is an invitee and not a bare licensee.

On the question of ratification, it is sufficient to say that appellee's testimony shows the manager knew of his habit of purchasing there on Sunday, and that no complaint was ever made of it, but that it was acquiesced in.

It is next contended by appellant that the violation of the Sunday laws was the proximate cause of the injury. However appellee was not violating the Sunday law. Section 2736 of C. & M. Digest makes it unlawful to sell goods, wares and merchandise on Sunday, but it does not make it unlawful to purchase, and certainly, if one is violating the law and negligently injures a person, his own violation of the law or wrongful act would not be a defense for his negligence. In other words, a person cannot be guilty of an act of negligently injuring another and be relieved of the consequences by showing that he, the wrongdoer, was at the time violating the law. But if both parties had been violating the Sunday law, it would not prevent one of them from recovering for injuries caused by the negligence of the other. 25 R. C. L. 1450; *Solarz* v. *Manhattan Ry. Co.,* 29 N. Y. S. 1123; *Ark. & La. Ry. Co.* v. *Lee,* 79 Ark. 448, 96 S. W. 148; *Feital* v. *Middlesex R. R. Co.,* 109 Mass. 398, 12 Am. Rep. 720; *Landers* v. *Staton Island Rd. Co.,* 13 Abbot's Practice Reports (N. S.) 338; *Bucher* v. *Fitchburg Rd. Co.,*

131 Mass. 156, 41 Am. Rep. 216; *Sutton* v. *Wauwatosa*, 29 Wis. 1, 9 Am. Rep. 534; *Kansas City* v. *Orr*, 62 Kan. 61, 61 Pac. 397, 50 L. R. A. 783; *Louisville N. A. & C. Ry. Co.* v. *Frawley*, 116 Ind. 566, 9 N. E. 594; *Louisville N. A. & C. R. Co.* v. *Buck*, 116 Ind. 566, 19 N. E. 453, 2 L. R. A. 520, 9 Am. St. Rep. 883; *Schmid* v. *Humphrey*, 48 Iowa 652, 30 Am. Rep. 414; *Stewart* v. *Davis*, 31 Ark. 518, 31 Am. Rep. 576.

We think, however, a complete answer to the argument that the violation of the Sunday law is a defense is that appellee was not violating the Sunday law.

We do not deem it necessary to set out the instructions, but we have carefully considered the objections of appellant and have reached the conclusion that the jury was correctly instructed.

The judgment of the circuit court is affirmed.