**Bessie A. SLAUGHTER and Herman Slaughter, Plaintiffs,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendants.**

**No. 79-6037.**

United States District Court,
W. D. Arkansas,
Hot Springs Division.

March 2, 1982.

Paul A. Pennick, Thacker & Pennick, Hot Springs, Ark., for plaintiffs.

Gary T. Hartman, Little Rock, Ark., and John B. Robbins, Wootton, Land & Matthews, Hot Springs, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

The plaintiffs, Bessie and Herman Slaughter, seek damages for injuries allegedly suffered due to the negligence of the defendant, Southwestern Bell Telephone Company. Damages in the amount of $175,000.00 are sought.

The defendant denies any negligence on the part of any of its employees or any liability for any injuries sustained by the plaintiffs.

Pursuant to regular schedule, and the parties having waived trial by jury, the matter was tried to the Court on February 16, 1982. The Court heard and received evidence from the plaintiff and the defendants. The parties rested and the matter was taken under advisement. The Court,

being well and sufficiently advised as to the record and the applicable law, proceeds to render its decision.

## JURISDICTION

The plaintiffs filed this action in the Circuit Court of Garland County on August 10, 1979. The defendant filed a Petition for Removal pursuant to 28 U.S.C. § 1441. The case was removed to the United States District Court of the Western District of Arkansas Hot Springs Division.

Bessie and Herman Slaughter were, at the filing of this lawsuit, residents of the State of Arkansas. The defendant, Southwestern Bell Telephone Company, is a corporation incorporated under the laws of the state of Missouri. Diversity is present. Damages exceeding $10,000.00 exclusive of interest and costs are sought. Jurisdiction is established pursuant to 28 U.S.C. § 1332.

## FINDINGS OF FACT

The plaintiffs are a retired couple. At the time of the events which led to this lawsuit, they were living near Buckville, Arkansas. Herman, retired on disability in 1967 at the age of 46 after suffering a heart attack. His wife, Bessie, due to an arthritic condition, has been determined to be totally disabled. She has received total disability social security benefits since 1976.

The Slaughters moved to Buckville, Arkansas in 1977. In late June, 1978, they requested the defendant, Southwestern Bell Telephone Company, install telephone service at their residence.

On June 29, 1978, Don Campbell and another Southwestern Bell employee went to the Slaughter's home to install a telephone. This entailed the installation of not only the telephone but also a telephone line. The area of the Slaughters' home was a rural one and few lines had been established. A temporary drop line was connected from a pedestal located across the road from the Slaughters' house to a temporary power pole at the corner of the house. The distance between poles is estimated at one hundred feet by both parties. Campbell

testified the line was a "straight shot" from the pedestal to the part of the house where the plaintiffs wished to have the telephone installed.

The temporary drop line was black, very flexible wire. It was one-half inch wide and one-fourth inch around. These lines must be placed in such a way as to follow the contour of the land.

Campbell testified that the temporary drop line must have slack to it. This allows for it to be moved by the contractor and to bear traffic without snapping. Slack was particularly important with the placement at the Slaughters' home. The road by the pedestal was well-traveled. Further, this road was composed of slate. If the wire was taut, the traffic would rub the wire against the slate resulting in the wire being torn, thus destroying the telephone service.

Prior to leaving the premises, Campbell went to the front door of the Slaughters' home. He carefully explained to both Bessie and Herman that the drop line had been placed. He told them the line would be buried as soon as a contractor was available. Campbell emphasized to both plaintiffs they should exercise caution when walking near the wire; he warned them to be careful around the wire. The Court finds the testimony of Don Campbell to be very credible. Campbell further testified that the wire was clearly visible on the ground from the house. No flags or warning devices were placed by the wire. A work order to bury the cable was placed the next day.

Due to a problem with the carrier, the Slaughters' telephone would not work immediately. They could make outgoing calls but the phone would not ring with incoming calls. Another Southwestern Bell employee went to the Slaughters' house to correct the problem.

During June and July, 1978, Herman and Bessie Slaughter spent a great deal of time in the yard under a cedar tree in an effort to find relief from the summer heat. The weather was extremely hot and their house was not air conditioned. In addition, Bessie was recuperating from back surgery which she had undergone in April.

After the installation of the telephone, Herman testified they discussed the wire every day. Both of the plaintiffs saw the wire and knew it was in the yard. They speculated about when it would be buried. Bessie testified she called the telephone company prior to July 12, 1978 and informed them the wire had still not been buried. She stated she told the company someone could get hurt.

On July 12, 1978, (thirteen days after the installation), Bessie Slaughter testified she started across the yard. She stated she tripped over the wire and fell on her right side. Although she was walking with care and was wearing her glasses, she did not see the wire.

Herman testified he saw her fall. She testified that she was able to get up by herself and did not think she was hurt at the time. Bessie went to see an attorney four or five days after the fall. He advised her to see a doctor.

Bessie testified her back began to hurt her severely. She went to see Dr. Stuart McConkie, an orthopedist, on July 24, 1978. He prescribed some medicine. After one week, her back had not improved and Mrs. Slaughter returned to Dr. McConkie. He admitted her to the hospital and in August, 1978 a back fusion was performed.

Mrs. Slaughter testified her back pain continued after the surgery. She had surgery again in November, 1980, to correct a bulging disc. This surgery was performed by Dr. Joe K. Lester of North Little Rock. The parties are in sharp dispute as to whether this surgery was necessitated by Bessie's fall. Because of its decision on the issue of negligence, the Court need not reach a decision on this issue.

## CONCLUSIONS OF LAW

As previously stated, the plaintiffs seek damages for injuries allegedly caused by the negligence of the defendant. Negligence, under Arkansas law, is the failure to do that which a person of ordinary care and prudence would do under the same or simi-

lar circumstances, or the doing of which a person of ordinary care and prudence would not do under the same or similar circumstances. *St. Mary's Hospital, Inc. v. Bynum,* 264 Ark. 691, 573 S.W.2d 914 (1978); *St. Louis-San Francisco Ry. Co. v. Ward,* 197 Ark. 520, 524, 124 S.W.2d 975 (1939). Actionable negligence is a breach of a duty resulting in an injury to some person to whom that duty is legally owing. *Armour & Co. v. Rose,* 183 Ark. 413, 36 S.W.2d 70 (1931); *Colyar v. Little Rock Bottling Works,* 114 Ark. 140, 169 S.W. 810, (1914). Was the defendant negligent in either its use of a temporary drop line or in the manner of installation?

■ The temporary drop line is utilized by the defendant company in order to give immediate service to the customer.[1] Without the use of temporary drop lines, service could not be provided for some three to six weeks, depending on the availability of a contractor. In this case, it was six weeks before the cable was buried. The defendant is a public utility, charged with providing telephone service to the public. This service necessarily entails that it be provided as quickly and as expeditiously as possible. The Court cannot conclude that the use of a temporary drop line is negligence per se.

■ The next issue, then, must be whether the installation of the temporary drop line was done in a negligent manner. The defendant has a duty to leave the plaintiffs' property in a substantially safe condition. *Arkansas Power & Light Co. v. Thompson,* 196 Ark. 1012, 120 S.W.2d 709 (1938). After a careful review of the record in this case, the Court cannot conclude the defendant breached this duty.

■ The Court has found that not only was the wire clearly visible but also that the plaintiffs were warned of its presence. The plaintiffs, as they stated, talked about the presence of the wire every day. An unsafe condition might have been created

had the defendant failed to warn the plaintiffs that the wire was stretched across the lawn. That just simply is not the case. As stated at trial by counsel for the plaintiffs, they "recognized the danger by the wire being there" and called the company to warn it of the wire's continuing presence. The Court cannot conclude the defendant breached any duty. Absent any breach of duty, there can be no actionable negligence, and hence, the defendant has no liability.

■■ Any injury subsequently suffered by Mrs. Slaughter was due to her own negligence. She "guesses she forgot the wire was there." Plaintiff failed to exercise the care of an ordinary, prudent person by forgetting about the presence of the wire. One who trips over an object of whose presence she was aware is guilty of contributory negligence. Even if the Court could conclude the defendant had breached a duty and was negligent, Mrs. Slaughter would be guilty of contributory negligence as a matter of law. This would be greater than that of the defendant. *Oliver v. Hallett Const. Co.,* 421 F.2d 365, 371 (8th Cir. 1970). See also, *May Constr. Co. v. Frick,* 253 Ark. 642, 488 S.W.2d 3 (1972).

Plaintiffs have cited the Court to several cases which they contend support their case. These, however, are "slip and fall" cases and are inapplicable to the case at bar. In each instance, the case involves a business invitee and the duty owed to the public to maintain safe premises. Further, the plaintiff in each of these cases was unaware of the dangerous condition.

After a careful review of the record in this case, the Court is of the opinion the claim of the plaintiffs is without merit and must be denied.

The findings of fact and conclusions of law are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure.

A separate order will be entered in accordance with this opinion.

---

1. The Slaughters testified they wanted immediate service in order to receive a telephone call from their son.