ARKANSAS POWER & LIGHT COMPANY v. ORR.

Opinion delivered October 31, 1927.

1. EVIDENCE—HEARSAY STATEMENTS.—In an action by a landowner for injury to his corn crop by having his land flooded by defendant's opening the gates of a dam, testimony of witnesses detailing statements of the person in charge of the gates, made out of court on the day following the flood and damages, relative to his being the defendant's agent, as to his authority under such agency, and as to his actions and other conditions at the time of the damage complained of, *held* improperly admitted as hearsay.

2. APPEAL AND ERROR—ADMISSION OF EVIDENCE.—HARMLESS ERROR.— The improper admission in evidence of the declaration of a person that he was defendant's agent in charge of the gate at the time the damage was done, *held* not a ground for reversal, where there was direct and competent evidence as to the same matters.

3. WATERS AND WATERCOURSES—INSTRUCTION AS TO LIABILITY FOR FLOODING LAND.—Where, in an action for the destruction of plaintiff's corn crop by waters released through defendant's negligent operation of a dam gate, the court instructed the jury that plaintiff could recover if defendant negligently raised the gates and caused the water to flow, such instruction was not erroneous as making defendant an insurer.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; reversed.

*W. H. Holmes, Harry E. Meek* and *Robinson, House & Moses,* for appellant.

*H. B. Means, D. D. Glover* and *D. M. Halbert,* for appellee.

MEHAFFY, J. The appellees, plaintiffs below, filed suit in the Hot Spring Circuit Court against the appellant, defendant below, alleging that they are residents of Hot Spring County, and that Orr is the owner of a tract of land in a high state of cultivation, which he rents

to tenants and receives part of the crops raised thereon as rent. That the land is low, and lies adjacent to the Ouachita River. That the defendant company is a corporation, and is engaged in the business of generating electricity, which it supplies to the public for hire, and, for the purposes of generating said electricity, it has constructed a dam across the Ouachita River near Cove Creek, in Hot Spring County, and has created a very large lake of water, and, in connection with said dam, it has installed a system of floodgates which it can raise and lower, and that it is doing business under the laws of the State of Arkansas. That, in the year 1925, plaintiff Orr rented said tract of land to Walter Hughes, and was to receive one-half of the corn which was raised thereon as his rent for said land. That Hughes planted and cultivated a crop of corn, and it grew and matured thereon. That, on the 16th day of October, 1925, the agents, servants and employees of the defendant company in charge of said dam carelessly and negligently, and without regard to the rights of the plaintiffs, raised the floodgates on said dam and permitted the water to flow out of the lake as aforesaid, causing it to overflow the plaintiff's land and destroying the plaintiff's said corn, destroying four hundred bushels, which was of the market value of $1 per bushel. Plaintiffs allege that, on account of the carelessness and negligence of the agents, servants and employees of the defendant company in raising the floodgates on their dam as aforesaid and overflowing the plaintiff's crop of corn as aforesaid, the plaintiffs have been damaged in the sum of $400.

Defendants filed a motion to make more definite and certain the complaint; and thereupon the plaintiffs, in response to said motion, stated that the land mentioned in plaintiff's complaint is a part of the southeast quarter of the southeast quarter of section 32, township 5 south, range 18 west, in Hot Spring County, Arkansas.

The defendants answered, denying the allegations about the ownership of the land and cultivation of it, and admitted that it was a corporation generating electricity

which it supplies to the public for hire; admitted the construction of the dam and the creation of the lake, and that it had installed a system of floodgates, and that it was doing business in Arkansas. It denied that its agents, servants and employees carelessly and negligently, and without regard to the rights of the aforesaid plaintiffs, raised the floodgates on said dam and permitted water to flow out of said lake as aforesaid, causing it to overflow plaintiff's crops in the amount set forth in the complaint. Defendant denies that it is guilty of any negligence and denied that plaintiffs were damaged in any amount.

Further answering, the defendant stated that, under the express permit and license of the State of Arkansas and the United States of America, it built a dam for commercial and public service purposes, and that the dam was constructed by competent engineers in a satisfactory manner and for the best protection of the property rights of any persons who might be affected by said construction; that such dam is so constructed as not to interfere in any way with the natural flow of said running stream, nor the volume thereof, nor the natural channel thereof; said dam being built on this defendant's property and maintained and operated with care and caution at all times. That the land described by plaintiffs is and has long been subject to overflow by the Ouachita River, even before the construction of said dam herein mentioned; that the construction of said dam or its operation in no way affected the susceptibility of plaintiffs' lands to overflow; that, at the time of the damage herein complained of, there was a general overflow caused by excessive rains and freshets that rendered the destruction of all crops situated as was plaintiff's inevitable, including plaintiffs', independent of the defendant's dam; that crops both above and below defendant's dam were destroyed, and that the conditions were the same or similar as to such other farms and crops as those that surrounded plaintiffs'; that plaintiffs knew, or, by the exercise of reasonable diligence, could have known of this

condition and the susceptibility of their lands to over-flow and their crops' consequent destruction, and guarded against same. That, if plaintiffs suffered any damage at all, the damage was caused by surface water and acts of God.

The defendant filed motion for change of venue, which was by the court overruled, and exceptions saved. There was a verdict and judgment for the plaintiffs in the sum of $300. Defendants filed motion for a new trial, which was overruled and exceptions saved, and defendants have appealed to this court.

The appellant's first contention is that the court erred in admission of testimony of witnesses Fisher, Stanley and Keith, detailing statements of party in charge of the gates of the dam, alleged to have been made on the day after the flood and damage. And appellant states that the entire case is based on this improper and highly prejudicial testimony.

We think this testimony was incompetent. The court should not have permitted these witnesses to testify to statements and declarations made by Murray. Neither the fact of agency nor the extent of an agent's authority can be proved by his declarations out of court.

"The authority of an agent, and its nature and extent where these questions are directly involved, can only be established by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself or make himself agent merely by saying that he is one. Evidence of his own statements, declarations or admissions, made out of court therefore (as distinguished from his testimony as a witness), is not admissible against his principal for the purpose of establishing, enlarging or renewing his authority; nor can his authority be established by showing that he acted as agent or that he claimed to have the powers which he assumed to exercise. His written statements and admissions are as objectionable as his oral ones, and his letters, telegrams, advertisements and other writings cannot be used as evidence of his agency.

The fact that the agent has since died does not change the rule." Mechem on Agency, § 285.

"Evidence is called hearsay when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom it is sought to produce it. The courts will not receive the testimony of a witness as to what some other person told him, as evidence of the existence of the fact asserted. This rule of exclusion is the same whether the evidence offered consists of a statement purported to be based on the declarant's own knowledge, but objectionable as unsworn, or of a sworn statement as to matters known to the declarant only through hearsay. The reason for the rule is that the unsworn statement of a person not called as a witness or subjected to the test of cross-examination is not recognized as having a sufficient probative effect to raise an inference that the fact is as stated." 22 C. J. 199.

The unsworn declarations of an agent are not admissible on behalf of the principal, even though the agent is dead. They are not admissible against the principal as a general rule.

The admission of the testimony as to the declaration of Murray that he was the agent, or in charge of the property, was improper, but that part of his declarations would not justify a reversal of the case, because "where there is direct evidence as to the same matters as to which a party's declaration has been admitted in evidence against the objection that it was self-serving, the admission of the declaration, even if technically improper, cannot be regarded as error." 22 C. J. 230.

"A rule which has been stated and applied many times by reviewing courts is that the admission of improper or objectionable evidence is harmless error where the fact involved is fully and clearly established by other evidence which is competent. This rule applies not only where the evidence improperly admitted consists of oral testimony, but also where it consists of photographs, maps, depositions, and, although the rule as

stated is supported by numerous cases, it has even greater force where the evidence properly received is admitted without objection or is of a more conclusive character than that improperly admitted, where not only the fact in question but the whole of the prevailing party's case is amply sustained by competent evidence, or where the complaining party himself adduces evidence to the same effect." 4 C. J. 975.

As to the question of agency and the testimony of these witnesses as to Murray's declarations, the error of admitting this incompetent testimony was cured by the testimony introduced by the defendant itself. It proved by Murray that he was the agent, and it also proved the same fact by others. If this were true as to the other testimony of these three witnesses as to Murray's declarations, the improper admission would not be a ground for reversal. But plaintiffs did not prove the same facts with reference to raising the gates and the manner in which they were raised by other and competent evidence. In other words, these three witnesses testified as to the declarations of Murray with reference to raising the gates and what he said about the height of the water, and that he said he was in charge of the property, etc. Also his statement about how high the water went below the dam, and other declarations, some of which were denied by Murray, and Murray's testimony contradicted the statements that these witnesses said he made.

An examination of the testimony of these witnesses and Murray's testimony will show that the testimony of these witnesses as to his declarations, except as to his agency, were different from his testimony, and therefore they would not come within the rule that, when incompetent testimony has been admitted and the same facts proved by competent testimony, the error is cured. The testimony of these witnesses was hearsay, and improperly admitted. The testimony of these three witnesses was not proper as part of the *res gestae*.

If plaintiffs had wished to contradict Murray's testimony about any of these matters they would first have to ask him about the statement and then put on their witnesses to contradict him.

"It appears that the admissibility of one class of statements depends upon their being spontaneous and impulsive, the material inquiry being whether the statements offered as evidence were made at a time and under such circumstances as to induce the belief that they were not the result of reflection or premeditation. A distinct class, however, exists in the case of statements which themselves are facts constituting a part of the transaction under the investigation. * * * Such statements are of the *res gestae,* are of the nature of verbal acts, and are admissible in evidence with the remainder of the transaction which they illustrate." 10 R. C. L. 976.

The testimony of these witnesses simply showed that Murray narrated the facts the following day, and they were wholly inadmissible as a part of the transaction.

It is next contended by the appellant that the instructions of the court, given at the instance of the plaintiff, and those given in behalf of the defendant, were confusing and contradictory, submitting conflicting views of the law, could not be harmonized, and constituted prejudicial error.

We do not agree with appellant that the instructions are confusing and contradictory. And, since the plaintiff introduced testimony of the declarations of the agent and this testimony was incompetent, the evidence in another trial will necessarily be from other witnesses, and it may be that this testimony, if introduced, might necessitate the giving of different instructions. At any rate, we do not think it can be said that the instructions as given by the court were confusing and contradictory.

It is next contended that the court erred in giving plaintiff's instruction No. 1, which makes the defendant an insurer of plaintiff's crops, and gives an erroneous view of the law governing riparian rights. Instruction

No. 1 tells the jury that plaintiff may recover if it negligently raised the gates and caused the water to flow, etc. No matter what the rights of the defendant might be with reference to building the dam and gates and operating the same, if it did these things negligently and this negligence caused the injury to the plaintiff, of course it would be liable. It is not liable because it built the dam or gates or operated the same, but it is only liable if its negligence caused damage. And this is what instruction No. 1, requested by plaintiff, tells the jury.

Appellant next contends that there was no testimony to sustain the verdict.

We have already held that the testimony of witnesses as to the declarations of the agent was incompetent, and that proof of the facts necessary to make a case would have to be by witnesses other than those simply testifying to the declarations of the agent. And, since the case will have to be retried and the erroneous evidence eliminated or omitted, we do not pass on the question of the sufficiency of the evidence, and deem it unnecessary to set out the evidence here.

For the error in admitting incompetent testimony the case is reversed, and remanded for a new trial.