ARKANSAS POWER & LIGHT COMPANY *v.* ORR.

Opinion delivered November 12, 1928.

*Raymond Roddy, W. H. Holmes, Harry E. Meek* and *Robinson, House & Moses,* for appellant.

*H. B. Means, D. M. Halbert* and *D. D. Glover,* for appellee.

MEHAFFY, J. This is the second appeal of this case. The decision in the case when it was here before is in

175 Ark. 246, 298 S. W. 1029. It was reversed and re-manded, and, on a re-trial in the Hot Spring Circuit Court, there was a verdict and judgment for $100. The appellant filed motion for new trial, which was overruled, exceptions saved, and the case is here again on appeal. The issues are stated in the case on former appeal, and it is not necessary to restate them.

The appellant insists on a reversal because it says the court erred in not admitting the testimony of witness Rube Gilliam, setting forth the dates of checks given by him to Fred Harper and Tom Moorehead, during the fall of 1925. Appellant cites numerous authorities to sustain this contention, and the principles of law and rules of evidence announced in said authorities are correct.

The testimony that appellant desired to introduce consisted of checks which the witness had given to Fred Harper and Tom Moorehead during the month of Octo-ber. Fred Harper had testified in reference to the height of the river or the flood above Remmel Dam on the 16th of October, 1925, and had testified that he went to Hot Springs about every two weeks with a bunch of cattle, and that he knew it was the 16th of October, as he had looked at some checks, and the check that Rube Gilliam gave him was dated the 16th of October; that he deposited it on the 16th, and knows it was on that day he took the cattle to Hot Springs; that he could look at these checks and tell the date, but that he knew it was the 16th; that a check that Rube Gilliam gave him was dated the 16th, and he deposited it on that day, and that was the day he saw the river, and testified about the flood.

The appellant undertook to introduce some of the checks that Gilliam had given for the purpose of con-tradicting Fred Harper as to the date. But Gilliam did not testify that he did not give the check on the 16th of October. He testified that he had given to Mr. Harper and to Mr. Moorehead some checks; that they drove together, and that generally Mr. Harper would deliver the cattle and the next morning Mr. Tom Moorehead

would call, and he would give the checks to Mr. Moorehead; that he had all of his canceled checks in the vault at the bank, and that he has gone through same, and that he thought all of the checks for October were there; that he could not say positively that was all the checks he had given, but that he thinks it was all of them, and that he looked through the October account. The court asked Gilliam if these were all of the checks that were given to both parties, and Gilliam answered: "Well, I would not swear that. I have all of my checks in a vault and— I am supposed to have them there. But I went through them hurriedly, and that is all the checks I found in October, 1925."

It will be seen that Gilliam did not testify at any time during his examination that he did not give a check on the 16th of October. On the other hand, he stated that he would not swear that these were all of his checks given in October, but that he had looked hurriedly in the vault, and the checks he had with him were all he found. Certainly the introduction of checks - of other dates would not tend to show that he did not give a check on the 16th of October, and therefore they would not be admissible to contradict Harper's testimony. The proof that a check was given on the 19th of October would be no evidence at all that one was not given on the 16th of October. And certainly, unless Gilliam could have testified that these were all the checks that he gave Harper, or that he did not give him one on the 16th of October, this testimony would be inadmissible.

It would have been proper to impeach witness Harper by proving that no check was given him by Gilliam on the 16th of October, because that would have tended to show that his statement about seeing the river and about the flood on the 16th of October was erroneous. But it would not be proper to impeach him or try to discredit him by showing that he received a check on the 19th of October when there is no evidence that he did not also receive one on the 16th of October. We think the court was correct in excluding this evidence.

It is next contended that the principles of riparian law are involved in this case, and that the owner of the dam was not an insurer. The appellant cites and quotes from numerous authorities in support of this contention. When this case was here on former appeal this question was discussed by attorneys in their briefs, and this court said:

"Instruction number one tells the jury that plaintiff may recover if it negligently raised the gates and caused the water to flow, etc. No matter what the rights of the defendant might be with reference to building the dam and gates and operating the same, if it did these things negligently, and this negligence caused the injury to the plaintiff, of course it would be liable. It is not liable because it built the dam or gates or operated the same, but it is only liable if its negligence caused the damage." *Ark. Power & Light Co.* v. *Orr,* 175 Ark. 246, 298 S. W. 1029.

The decision of the case when here before is the law of the case now. And this case was tried on the theory that the damage claimed by plaintiff was caused by the negligence of the defendant, and not because it built a dam and gates and operated them. In other words, the right to recover in this case depends wholly only whether appellant was guilty of negligence, and there is no contention that there is any absolute liability or that the appellants were insurers.

Appellant's next contention is that the evidence was insufficient to sustain the verdict. When the case was here before, this court did not pass on the sufficiency of the evidence. We there said: "And, since the case will have to be retried and the erroneous evidence eliminated or omitted, we do not pass on the question of the sufficiency of the evidence, and deem it unnecessary to set out the evidence here."

The evidence on the part of appellant was to the effect that the gates were raised, that the Ouachita River was very high, and that on the 16th of October appellant raised eleven of the gates; that the gates are about 27½

feet wide, and can be raised about 17 feet. Witness, who was at the time in the employ of the appellant, stated that on the 16th of October the highest point reached by the water was 19.6 feet. The dam is approximately 900 feet long and has an extreme height of 75 feet. The height of the gates is 57 feet from the bed of the river. The gates were originally designed for a height of 55 feet, but the water can now be raised to the height of 57 feet.

The testimony shows that these gates were raised, and that permitted the water held by the dam to rush through and overflow and injure the crops. There is no contention, of course, that it could not have been let off gradually. In fact, it is the contention of the appellant that the gates were not all raised at the same time. But it is not necessary to set out the entire evidence. We have examined it very carefully and have reached the conclusion that the evidence as to whether the crops of appellees were destroyed by the negligence of the defendant is sufficient to take the case to the jury. And it is a well established rule of this court that, if there is any substantial evidence to support the verdict of the jury, it will not be disturbed by this court. The appellant does not complain about the instructions given or refused. It is therefore conceded that the question of negligence was properly submitted to the jury, and the jury's finding on the question of fact is conclusive here.

It is the province of the jury to pass upon the conflict in and the weight of the testimony, and the fact that the testimony is conflicting and that the verdict may even appear to be contrary to the preponderance of the testimony, furnishes no ground for reversal. *Blankenship v. State, ante,* p. 190; *Wright v. State,* 177 Ark. 1039, 9 S. W. (2d) 1033; *Tyner v. State,* 109 Ark. 138, 158 S. W. 1087; *People's Bank v. Brown,* 136 Ark. 517, 203 S. W. 579; *Harris v. Ray,* 107 Ark. 281, 154 S. W. 499; *Gazola v. Savage,* 80 Ark. 249, 96 S. W. 981.

The verdict of the jury was against the appellants on the facts, and the case is therefore affirmed.