MISSOURI PACIFIC RAILROAD COMPANY *v.* JUNEAU.

Opinion delivered November 19, 1928.

418

*E. B. Kinsworthy* and *R. M. Ryan,* for appellant.
*Murphy & Wood,* for appellee.

MEHAFFY, J. The appellee brought suit in the Garland Circuit Court against the appellant, alleging that he was the owner of certain property, describing it, and that, in 1900, the Little Rock, Hot Springs & Western Railroad Company constructed its main line track in Valley Street, west of plaintiff's property, and about forty-five feet from said property; that since that time the Missouri Pacific has become the owner of the property, and that, some time in 1927, the appellant changed the location of its tracks, and placed its tracks in Valley Street, west of plaintiff's property, so that said track runs within about 16 feet of his property; that it crosses the sidewalk on the east side of Valley Street, a short distance south of plaintiff's property, and that it is now operating its trains and railroad business over said track, located within 16 feet of plaintiff's property; that it has abandoned and torn up the tracks over which it formerly operated. That plaintiff has a two-story building situated on his property, and is operating a grocery business on the first floor of said building, and occupies the upper story as a home and rooming house; that the change in the location of defendant's tracks has obstructed the use of Valley Street, and has made the property less accessible, and almost destroyed the use of Valley Street south of the plaintiff's property by pedestrians; that the defendant operates heavy trains and heavy engines over said track, and is constantly switching cars over said track along Valley Street; that the change in the location has greatly damaged plaintiff's property, on account of the noise and vibration caused by the operation of its trains and engines and the switching of cars, and the smoke and dirt from said tracks, and the dust and cinders caused by the passage of such trains, engines and cars over said track, and that it has obstructed the use of Valley Street by the public. That the change in its

tracks has greatly damaged plaintiff's business on account of the noise, smoke, steam, dust and vibration, and that plaintiff has been damaged in the sum of $3,000. It also alleged that the city of Hot Springs had not granted the defendant the right to change its location.

The appellant filed its answer, denying all the material allegations of plaintiff's complaint as to damaging his property, and alleged that the line constructed originally was 40.3 feet from the nearest point of plaintiff's property, and admitted that, since the relocation, its line was 21.3 feet from plaintiff's property. It admitted that it had abandoned and torn up the track over which it formerly operated. It denied that the location of the tracks and engines had obstructed the use of the street or made appellee's property less accessible, or that it destroyed the use of Valley Street south of plaintiff's property, and denied that the operation of its trains and engines damaged plaintiff's property in any way. It alleged in its answer that the city council of Hot Springs, in 1894, passed an ordinance granting a franchise or right-of-way over Valley Street, opposite appellee's property, and attached said ordinance to its answer. It also alleged that, when the ordinance was passed, there was a consent to the granting of said franchise and right-of-way by the property owners along the street. It also alleged that the city council of Hot Springs, in 1899, passed an ordinance granting the same rights as above mentioned to the Little Rock, Hot Springs & Western Railroad Company, and that there was no objection to granting of said ordinances by the citizens of Hot Springs. That in 1900 the Little Rock, Hot Springs & Western Railroad Company built a line of railroad track along Valley Street, adjacent to appellee's property, and began to operate its trains over it, and continued to do so until its property was sold to the St. Louis, Iron Mountain & Southern Railroad Company, and that more than ten years ago the appellant purchased all the property of the St. Louis, Iron Mountain & Southern Railway Company in Hot Springs, including the right-of-way

along Valley Street and adjacent to the property of appellee. That none of the property owners had ever objected to the building, maintaining and operating of said track, and that, under said ordinance, the appellee had no right or title in and over said Valley Street, or, if he had ever had such right, it was barred by the statute of limitations. That, when the track was originally built, Hot Springs was a small village, but that it has grown to a city of the first class and of great commercial interest, and that its business and traffic had grown so that it was impossible for appellant to perform its duties as common carrier. That the track as originally built was on the curve, and dangerous to be operated, and that in 1927 it moved its said tracks, as alleged by plaintiff, and is now operating its trains over said tracks under authority given to it by the ordinances above mentioned. It especially alleged that appellee had not been damaged, and pleaded the right and authority given to it by the ordinances as a complete defense and bar to the action. The ordinances grant to the railroad company the right to lay, maintain and operate its tracks and engines over said Valley Street, adjacent to appellee's property.

The appellee testified that his property was located on East Grand and Valley Streets, being part of lot 6, in block 40. The lot is 35 feet deep on Valley Street and 130 feet on Grand Avenue. That he acquired the property through his father, and had been in possession of it since 1905. Deeds to the property were introduced. He further testified that his property contained five rooms upstairs, and a store room and a four-room apartment with bath; that he rented out the five rooms upstairs, and ran a grocery and meat business downstairs. The size of the building was 40 feet wide, and it took up the entire ground, about 40 feet by 35 feet. The building was a frame building, with a concrete foundation. That the relocation of the tracks was made about ten months ago; that before the change was made the track was about 40 feet from his building, and that since the track has been changed it is 17 feet from the corner of his building to

the nearest rail, and was 23 feet 3 inches from the front of his building to the ball of the rail. That before the track was changed appellee never paid any attention to it. That he had a driveway along by his building, and wagons and trucks and everything went along there. That, since the track has been moved over, the vibration was so great that it caused a tremor of the whole building. That you could feel it all over, and that the smoke and cinders were bad. That he never noticed this before the change was made. Six trains ran over the track every day each way, and the switch engine worked in and over said track. The railroad yards are about 250 feet north of his property. The switch engine, in switching cars, had to pass over the track near his place, and it caused him inconvenience and discomfort, and he could not leave the windows up upstairs on the side of the building next to the track. That it increased the danger from fire. That when the heavy engines passed they shook the building very materially, and that it shook articles on the shelves in the store. That before the change was made there was no vibration, and that he was not inconvenienced by reason of cinders. That the switch engine operated over the track from eight o'clock in the morning to four in the afternoon, and that sometimes in the winter a night crew would operate until about 11 o'clock. Before the change, cars and wagons could park on the west side, but it was dangerous now to park there, and a man with a team is afraid that he will get caught if he parks between the railroad and the building. If a car was parked there, no one could pass. The rails were not buried down in the ground, but the whole rail sticks up. There is a light pole or telephone pole that sets off from the building. In the passageway between the pole and the track there is not sufficient room for a car to pass.

Appellee, over the objection of appellant, testified that there had been a decrease in his business. That, prior to the change of the track, people would send their little children to the store, but they are afraid to do so

now because the track is so close to the building. And appellee testified at length about his business and about the decrease in his business because of the relocation of the track. He also testified, over the objection of appellant, about ability to rent his rooms. Admitted that he had sued the railroad company twice before. That in 1912 the train ran over him, and cut off his leg. That he was working for them at the time. That he got $7,500 judgment against them, and that in another suit he sued the M. D. & G. for running through and taking part of his building, and that he recovered $1,900 for that. Before the relocation of the tracks he rented his rooms for $2 a week, and he now gets $1.50 a week.

He testified that engines will throw cinders more at 17 feet than they will at 40 feet, and that it depends upon the wind which way the cinders blow. That the present track is now 17 feet from his building, and that the little building that offsets into the street is 11 feet from the railroad track. That the closest rail to his house proper is about 17 feet. None of the railroad track is on his property. The house has been on his property about 40 years. His building faces Grand Avenue and does not face Valley Street. That the railroad company is not interfering with any entrance on Valley Street, but is interfering with the traffic along Valley Street. He also testified that the conditions on Grand Avenue were the same now as they were before the change.

G. C. Smith, W. T. Hawkins, Mrs. Dode Crawford, M. S. Bayless, George Hubbard, Jim Lowrey, C. A. Rutledge, R. S. Wood, Mrs. Sam Campbell, Tim O'Connor and Frank Rawson all testified about the situation of the property and tracks and the operation of trains before and after the relocation of the road, and to the accessibility to plaintiff's property, etc.

F. Leslie Body, S. J. Erickson, E. L. Howlett, T. J. Bledsoe, Leon Numainville, W. L. Calvert, E. J. Lassiter, T. C. Davis, A. F. Annen and E. F. Latta testified for appellant, in effect, that the relocation of the track did

not injure or damage appellee's property, and that they felt no vibration.

There is a conflict in the evidence on the material points, the witnesses for appellee testifying to certain facts that are denied by the defendant's witnesses. We deem it unnecessary to set out the testimony fully, because it was conflicting, and it was therefore the province of the jury to settle the facts.

The appellant contends that the evidence is totally insufficient to support the verdict of the jury, and argues, together with this proposition, that the verdict was contrary to law, contrary to evidence, and contrary to both the law and evidence. It is contended that trains cannot be operated without noise, smoke or cinders, and that, if appellant is to be penalized because of these things, there is no way or manner in which a steam engine or locomotive could be operated. And he cites and quotes from the case of *Metropolitan West Side Elevated Rd. Co.* v. *Goll,* 100 Ill. App. 323, cited in note, 22 A. L. R. 180. He quotes the following from the above case: "We are not referred to any cases in this State which hold that noise and disturbance by the running or operating of trains were of such character that at common law the same would be actionable." The above quotation is not quite correct. See same case in 100 Ill. App. 323. The opinion in the above case, among other things, states:

"Damage thereby caused to neighboring property owners was without remedy in this State until, by virtue of the constitutional provision made in 1870, that private property shall not be taken or damaged for public use without compensation, such damages have again become recoverable as at common law. * * * It cannot be doubted that at common law mere noise in the immediate vicinity of the premises, and especially of the dwelling house of a landowner, may be of such a character as to constitute an actionable nuisance, remediable by an action on the case for damages or by injunction. Noise and disturbances therefore, of such a character as at common

law would be actionable, are an element of damages for which recovery can be had in a suit like the one at bar."

The court also said in the same case: "But, when either a private person or a corporation so uses his or its property as to cause damage actionable at common law, then either or both are liable therefor, and the corporation is not protected from such liability by the fact that it may have been authorized by statutory enactment to do the things which occasioned such actionable damage."

The court also said: "There has been some conflict of opinion as to whether necessary noise incident to the operation of a railroad is an element for damage for which recovery can be had. * * * Such ordinary and necessary noise is generally considered to affect only a public and common right, for which no private action will lie. But it has been held in this State that mere noise made by a railroad company in the immediate vicinity of a dwelling house may be of such a character as to constitute an actionable nuisance."

It is also held by the same court that it is a question of fact for the jury to determine, and that, if one's property is injured by noise, smoke and dust, the property owner may recover damages therefor.

In 22 A. L. R., referred to by the appellant, it is stated: "If noise, smoke, dust, cinders or things of that sort can be shown to have damaged the property itself, then they should be considered by the jury in arriving at the amount of the recovery. If, however, they amount simply to an inconvenience or discomfort to the occupants of the property, they would not be an element of damages, and should not be considered by the jury."

It is also stated in the annotations in 22 A. L. R., referred to, that not only smoke and cinders may cause such damage as that a recovery can be had, but cutting off access by the laying and use of a switch close to abutting property gives the property owner right of damages; and that the cases uniformly hold that, if a grade of a street is changed by a cut or viaduct, so as to interfere with the abutting owner's ingress and egress, he is

entitled to damages. And, of course, the same rule would apply where, instead of changing the grade, they changed the location of the track, and that does not mean prevent ingress or egress, but interfere with it, and thereby damage the property.

When the track was originally laid, appellee, or the owner of the property, could have recovered all the damages that he suffered because of the railroad track and the operation of the track at that time; and that means future damages as well as present. That is, all the damages resulting from a proper operation of its trains. But if a relocation of a track damages the property in addition to the damage suffered because of the operation of the trains on the original track, then the property owner would have a right to recover.

Our Constitution provides: "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use without full compensation therefor."

Therefore, if appellee's property was damaged by the relocation of this track and the operation of engines and trains over it as relocated, he has a right to recover whatever damages the evidence shows were caused by the relocation of the track and the operation of the trains over it as relocated.

The track was originally 40 feet from appellant's property. As now located, it is approximately 17 feet, and the proof shows that the track, located as it now is, is an interference with ingress and egress to appellee's property that did not exist before the relocation of the track. Also that operating engines and trains on the original track caused no vibration, and at the present location there is. To be sure, there is a conflict of evidence about this vibration, but it was the province of the jury to settle that.

Appellant argues that the ingress and egress to appellee's property has not been affected, but appellee testified that, before the track was changed, he had a

driveway along by his building, and wagons and trucks and everything went along there. That, since the track has been moved over, the vibration was so great it caused a tremor of the whole building; that you could feel it all over, and the smoke and cinders were bad. That cars and wagons used to park on the west side of the building before the change was made, but it is dangerous now to park there. And that a man with a team is afraid he will get caught if he parks between the railroad and the building; that if a car was parked there, no one could pass. If this is true, it certainly interferes with the ingress and egress to appellee's property.

In the Gulledge case, referred to by appellant, it is stated: "It is alleged that, by reason of the appropriation of said street by defendant for its roadbed, switches and switch stands, and the operation of the railroad along the street, plaintiff's property has been diminished in value to the extent of the sum of $2,000." *Ashley, D. & N. Ry. Co.* v. *Gulledge*, 121 Ark. 143, 180 S. W. 222.

And in that case the appellant railroad company insisted that the testimony was not sufficient to make out a case which rendered the railway company liable. But the court said that, under the well settled decisions of this court, the evidence was sufficient to warrant a recovery on account of the depreciation of appellant's property in value.

In speaking of the case referred to in 73 Ark. 1, *Little Rock & H. S. Rd. Co.* v. *Newman*, 83 S. W. 653, 108 A. S. R. 17, the court in the Gulledge case said that the access to the plaintiff's property was not taken away or rendered less convenient. Certainly the proof in the instant case shows that it was rendered less convenient and the access was interfered with.

It is unnecessary, however, to either cite or quote from decisions of this court, because it has been uniformly held, since the adoption of the Constitution of 1874, that damages may be recovered if caused by the construction or operation of a railroad, if caused to abutting property.

It is contended also by appellant that the court erred in permitting appellee to testify as to the decrease in his grocery business. We think this testimony, in connection with the testimony of appellee that the building of the track where it now is made it dangerous, and that small children who came there to purchase things before could not now come, was competent evidence. Of course he could not recover any speculative profits, but this was one way of showing that his property had been damaged.

It is also contended that the court erred in permitting appellee to show that the market value of his property had decreased. We do not agree with counsel in this contention. If the building of the railroad track near his property decreased its market value, it injured it. It damaged it, and for this damage the owner of the property is entitled to recover. And, after this testimony was objected to by the appellant, appellee was then asked to state whether that decrease in the market value of his property was caused by the change of the track or some other cause. If it was caused by anything else, of course it would not be proper, because, if the railroad company is liable at all, it is liable for the damage it caused, and not for damage caused by some other agency.

Appellant next objects to instruction number one. It is contended that the court should have told the jury that, unless the appellee had suffered some peculiar or special damage by reason of smoke, noise and cinders than that suffered by the other property owners in like circumstances, then he could not recover, and that a failure of the court to tell the jury this made instruction number one erroneous. In instruction number one the court stated the issues to the jury, and it did not undertake to do anything else other than state what the issues were.

It is next contended that the court erred in giving instruction number two. In that instruction the court told the jury that it should not determine whether or not the defendant had a right to lay its tracks along the street in question, and that there could be no damages recovered

by the plaintiff in this case on account of the location as first made; but, after the tracks had been once laid, they could not be changed or relocated without the consent of the owners, unless the defendant company should pay to the abutting owners of the property any damage that would be suffered on account of the relocation of the tracks. The court continued, in instruction number two: "In other words, the company would not have a right to relocate their tracks under the original grant or ordinance by the city, without being liable to the plaintiff in this case, if his property there has been damaged on account of the relocation of the tracks."

This was a plain statement to the jury of the law. If the relocation of the tracks caused damage to his property, he was entitled to recover. Otherwise, he was not entitled to recover. But the appellant says that it has been held that a right given a railroad company in a State cannot afterwards be impaired, and that the franchise as originally passed became a contract.

That might be true if the track remained where originally located, but the appellant and city of Hot Springs could not make a contract that would deprive any property owner of the right to recover damages if the building of the track or the relocation of it damaged his property. In other words, the changing a grade or relocating a line by which property is damaged, that was not damaged before the grade was changed or line relocated, gives the one whose property is damaged thereby the right to recover.

Appellant discusses other instructions, and especially instruction number three, but we think the instructions as a whole constituted a correct statement of the law, and that there was no error in the granting or refusing to grant any instructions.

The question as to whether the relocation of the track damaged the property of appellee was one of fact to be determined by the jury from the case, and the finding of fact by a jury is conclusive if there is any substantial evidence to sustain such finding. This court has

uniformly held that a verdict of a jury based on substantial evidence will not be disturbed by this court, although we might think that it was against the weight of the evidence. We do not pass on the weight of the evidence nor the credibility of the witnesses.

Since we hold that there was evidence sufficient to justify the submission of the case to the jury, it follows that the case must be affirmed.