Missouri Pacific Railroad Company, Thompson, Trustee
*v.* Sorrells.

4-5742 136 S. W. 2d 1035

Opinion delivered February 12, 1940.

W. L. Curtis and Thomas B. Pryor, for appellant.

Partain & Agee, Bob Bailey and Hall & Hall, for appellees.

Humphreys, J. Appellee, Hobart Sorrells, brought a suit against appellant in the circuit court of Crawford county to recover damages to his truck and himself oc-

curring at a public road crossing about one and one-half miles west of Mulberry on or about the 30th day of August, 1938, at nine o'clock p. m.

Appellee alleged that the truck in which he was riding was demolished and he himself injured on account of appellant's failure to use ordinary care to construct and maintain its crossing in a reasonably safe condition for persons traveling over it, but, on the contrary, appellant constructed and maintained it in such a bad and rough condition that in attempting to drive over the crossing in his truck the rough and uneven condition thereof killed his engine, put out his lights and caused his truck to stall on the track; that he then attempted to start same and as he tried to do so, he observed a passenger train of the appellant approaching from the east; that he attempted to escape from the perilous position in which he had been placed by jumping out of said truck and in doing so he fell heavily in a ditch and against a timber or other object which injured his flesh, muscles, tendons, ligaments and nerves in and about his back and spine and sprained his left ankle; that on account of the injuries received he was caused to suffer and will continue to suffer in the future great mental and physical pain and anguish, and to spend money for medical treatment and has been caused to lose time and will continue to lose time; that his injuries are permanent for which he should recover $2,750 and should recover damages to his truck in the sum of $250 additional.

Appellant filed an answer denying the material allegations of the complaint and further alleged that said injury and resulting damages, if any, were wholly the result of appellee's own carelessness and neglect, in that he failed and neglected to use ordinary care and prudence in leaving the truck at the crossing in ample time to reach a place of safety prior to the arrival of the train and that said appellee failed and neglected to use ordinary care and prudence, in the night time, by backing away from said truck and stumbling over some undiscovered

object on appellant's right of way all of which was specially pleaded as a bar to appellee's right of recovery.

The Massachusetts Fire & Marine Insurance Company filed an intervention alleging that it paid appellee the amount of $600 as insured loss on account of the destruction of the truck and took from appellee the subrogation rights and that any recovery on the truck involved in the suit up to the amount of $600 should be in favor of the intervener. The intervener adopted appellee's allegations of negligence against appellant and prayed that the judgment which might be recovered against appellant should be rendered in its favor in the sum of $600.

Appellant filed an answer to the petition of intervention denying each and every material allegation therein and prayed that said intervener take nothing by reason of the action and that it have judgment for its costs and all other proper relief.

The cause was submitted to a jury under instructions of the court and the evidence adduced upon the sole issues of whether appellant was negligent in failing to properly construct and maintain the crossing over the public highway in such manner that the same was safe and convenient to travelers so far as it could do so without interfering with the safe operation of the road; and whether appellee was negligent in not getting out of the truck sooner and in such manner as to prevent injury to himself, with the result of a verdict and judgment in favor of appellee for $2,100 and in favor of the intervener for $400, from which is this appeal.

Appellee testified, in substance, that in traveling along the highway he came to a railroad track or an approach to a railroad track and stopped, looked and listened, and as he observed and heard no train approaching he started over the crossing in low; that there was a low place between the rails and that when he dropped down in there his truck bounced up and down and the lights went out and the truck stopped and he got out and raised the hood and struck a match, but

being unable to find anything the matter with the wiring he got back in the truck and tried to start the motor, but it would not start; that he was not familiar with the crossing and had never been there before in his life; that while he was attempting to start the motor, he observed the headlights of a train coming around a curve and he saw that he would have to get out or get killed; that he got out of the truck as quickly as he could and started to back away from it at which time he was blinded by the lights from the train and fell over a cross tie about two steps from the crossing into a hole injuring his back and spraining his ankle; that his injury gives him a lot of pain and that it always hurts; that for two months he could not bend over without it seeming like a knife was sticking in his back; that he has been unable to work at anything; that he can not bend over without suffering great pain; that as a result of the injury there is a swollen place or enlargement on his back about the size of a hen's egg; that he has been under the care, treatment and observation of a doctor ever since, more or less; that he is forty-two years of age and has a family dependent upon him and that in the last six months he has been unable to earn more than $20; that before his injuries he averaged in his trucking business an income out of his trucks of about $150 a month; that the truck which he was driving and which was demolished had not been fully paid for; that it was financed through a finance corporation and insured; that he made a settlement with the finance company for what he owed it on the truck; that the truck cost him $1,150 and was worth about $800 when destroyed; that the finance company allowed him $600 in the settlement, but appropriated the amount to the payment of the balance he owed it; that at the time the truck was destroyed he had not paid the July and August payments; that his truck was in good condition and only a few days before the accident it was tested.

Everett Arnold, who lived near the crossing and was a witness for appellant, testified relative to the crossing

that it was in bad shape; that the depression in the highway over-the crossing was lower between the rails; that he went over the crossing in wagons and that for about two weeks prior to the accident the WPA had been hauling heavy loads of rock over the crossing every day; that appellant put chat on this crossing early the next morning after the accident; that it put the chat through the track and leveled it up; that it put chat on the approach on the outside of the track.

Mrs. Everett Arnold, wife of Everett Arnold who resides with her husband near the crossing, was also introduced as a witness by appellant and testified that the highway had been graveled up to the crossing prior to the accident, but that nothing had been done to the crossing and that it was in bad shape and had been for a good while. She also stated that shortly after the accident the crossing was repaired and crossing planks put on; that she had used the crossing two or three times a week prior to the accident and that the crossing was rough. She further stated that she knew the bad condition and that she had to be careful in going over it in her car.

L. E. Taylor, who was the section foreman of appellant, was introduced by appellant and testified that he was in charge of the particular crossing and had been for thirty days and that he knew that no repairs had been made on the crossing during that time until after the accident; that he heard of the accident the night before and went up there, but that it was dark and he made no particular inspection of its condition, but on the next morning after the truck was hit he repaired the track and put new ties in the track for about forty-five ties and that while he was putting in the ties he noticed the condition of the road bed next to the north rail; that it was three inches from the top of the rail to the surface of the road bed and that it was two inches from the south rail from the top thereof to the surface of the road bed and that on the outside of the south rail it was not very low, but it was beaten down some, not

beaten down as bad as on the north side of the rail, but was beaten down some; that he had the men fill up the crossing as they were working there and they worked from 10:30 until 11 o'clock in filling up the crossing; that the lowest place between the rails down to the roadway to the center of the track was three inches; that in between the rails he filled up to clear the crossing to the top of the rails.

Mrs. Joe Bright, who lived near the crossing and who was introduced by appellant as a witness, testified that she had used the crossing prior to the accident two or three times a week and said that it was rough and that she had to be careful in crossing it on account of its condition.

Dr. Robert Wood, a witness introduced by appellee, testified, in substance, that he was a physician. After qualifying as an expert he stated that he had had eleven years experience as a practitioner; that he examined appellee on August 31, 1938, thoroughly; that he had an abrasion on the back of his left hand which was black and blue; that he was bruised on the lower part of the back in the lumbar region and there was a mass there about the size of a hen's egg which was discolored and abrasions of the skin and up and down the back; that his ankle was bruised and swollen and was about three times as large as a normal ankle; that all these injuries had been recently inflicted; that in his opinion· the knot or mass was a muscle and nerve injury which would perhaps never disappear and would continue to cause pain and prevent him from lifting or doing heavy work; that his bill for treating him to the date of the trial was $50.

The testimony is undisputed as to the speed of the train. At the time the engineer discovered the truck stalled on the track the train was running sixty miles an hour and was about nine hundred or one thousand feet from the crossing. The engineer applied the emergency brakes and reduced the speed of the train to forty or forty-five miles an hour when the engine struck the truck

and carried it down the track several hundred feet before stopping.

There is a conflict in the testimony· as to the conversation that occurred between some of the trainmen and appellee when the trainmen came back to the crossing where appellee was standing.

The trainmen said he informed them that he was not hurt and he testified that he told them he was hurt. He admitted that they told him to get the section foreman and have him clear the track which he did. He said they told him to see a physician and find out the extent of his injuries. The trainmen denied giving him any such advice. He testified that he did see a physician the next day and had been under his treatment until the date of the trial.

The issues involved on this appeal are only two, aside from the issue as to the alleged excessiveness of the verdict on account of personal injuries received by appellee, and these issues are whether appellee failed to leave the truck as quickly as he should and whether he exercised care in leaving the same; and whether appellant used ordinary care to keep the crossing where the accident occurred in a reasonably safe condition for persons traveling over it and whether a failure on its part to do so was the proximate cause of his injury.

(1) We pretermit any discussion as to whether appellee was guilty of contributory negligence in driving his truck upon the crossing because the undisputed evidence reflects that he was not. According to his testimony, which is undisputed, his truck was in good condition and before driving on the crossing he stopped, looked and listened in both directions and, not seeing or hearing a train approaching, he proceeded to drive upon the crossing in low.

We, therefore, proceed to a discussion of whether there is any ·substantial testimony in the record tending to show that appellee was not negligent in jumping out of the truck and stepping backward to a point where

he stumbled over a crosstie and fell into a hole or ditch resulting in his injuries. It will be remembered that it was in the night time and he testified that he was blinded by the light from the headlight of the engine. We think appellee was confronted with an emergency and, under the circumstances, was not required, in the exercise of ordinary care, to withdraw to a place of safety in a strictly orderly manner. Appellant argues that under the testimony appellee had ample time for an orderly retreat to a place of safety after he discovered the approach of the train, but we think whether he had was a question for the jury. At least, the jury might have found otherwise. The testimony shows that the train was moving at the rate of forty or forty-five miles an hour when it struck the truck and faster than that in approaching it and was only three hundred or four hundred feet away when appellee discovered it. Appellee testified that if he had not jumped out quickly and sought a place of safety he would have been killed. So the jury may have found that in jumping out as he did and in attempting to back to a place of safety he did as any reasonable man would have done in the presence of imminent danger, and was not guilty of contributory negligence in jumping out and backing away from the truck. To say the least of it, the testimony was conflicting as to whether appellee was guilty of contributory negligence that was the proximate cause of the injuries he received and, on account of the conflict, it became a jury question. The issue of contributory negligence was submitted to the jury under correct instructions and appellant is bound by the adverse finding of the jury on the issue.

(2) The next question arising is whether there is substantial evidence in the record, viewed in the most favorable light to appellee, tending to show that appellant failed to exercise ordinary care to maintain the crossing in such manner that same was in a reasonably safe condition for persons traveling over it without interfering with the safe operation of the road.

In the case of *St. Louis, Iron Mountain & Southern Railway Co.* v. *Smith,* 118 Ark. 72, 175 S. W. 415, this court laid down the duty of railroad companies operating in this state relative to maintaining its crossings over public highways and quoted as follows from American and English Enc. of Law (2 ed.), volume 8, p. 363:

"It is the duty of every railroad company properly to construct and maintain crossings over all public highways on the line of its road in such manner that the same shall be safe and convenient to travelers, so far as it can do so without interfering with the safe operation of the road.

"The duty of the railroad to construct and maintain crossings over public highways is a matter usually regulated by statutory enactment. And a failure to regard such statutory requirements will render the railroad company liable for all injuries from such neglect of duty."

Under the principles of law set out above we think there was sufficient substantial evidence to warrant the verdict of the jury. In this opinion we have already set out all the evidence, in substance, in the record tending to show the condition in which this particular crossing was maintained. Relative to the condition of the crossing appellee testified that when he drove onto it his truck bounced up and down so that it stopped his motor and put out his lights. All the witnesses testified that the depression between the rails was from two and one-half to three inches below the top of the rail. The section foreman and three or four witnesses who live near the crossing testified that the crossing was not in good condition, that it was rough and that even those knowing its condition had to drive over it very carefully. The evidence also shows that for two weeks prior to the accident trucks heavily loaded with rock had been continuously passing over it to supply rock for a project in operation near the crossing. No attention had been paid to the crossing notwithstanding this heavy traffic on it by the section foreman who must have known that

it had been used for two weeks for very heavy traffic. In fact there is no evidence whatever in the record showing that the section foreman or appellant's employees had paid any attention to this crossing either in the way of inspecting same or making repairs thereon until the next morning after the accident had occurred. It was then repaired and made safe for travelers over it. It is noticeable that all the witnesses who testified relative to the rough, bad condition of the crossing were witnesses introduced by appellant itself except the appellee. There is ample evidence in the record to show that the condition of the crossing was defective and that this defective condition had existed for some time prior to the accident. Under these circumstances the jury was warranted in finding that appellant was guilty in the maintenance of the crossing and there is substantial evidence to sustain the verdict of the jury. This issue was submitted to the jury under correct instructions and appellant is bound by the verdict.

Appellant argues that even though it were guilty of negligence in failing to maintain the crossing it was not shown that the negligence on its part was the proximate cause of the injury received by appellee. The jury has acquitted appellee of contributory negligence under correct instructions of the court and that being the case it follows that the proximate cause of the injuries received was the failure of appellant to exercise ordinary care to maintain the crossing in a reasonably safe condition for travelers to pass over it. We think there is ample evidence in the record to sustain the verdict of the jury to the effect that the injuries were the direct result of appellant's failure to properly maintain this railroad crossing.

Appellant contends that instruction No. 3 given by the court was long and involved. We agree with appellant that it was quite lengthy, but after reading it carefully we can not agree with appellant that it was involved to such an extent that the jury could have been misled by it. The instruction was specifically objected

to by appellant because it submitted the question to the jury of whether appellee in leaving the truck was acting on an impulse or under an emergency. As stated before we think there was testimony in the record tending to show that an emergency existed, hence, it was proper to submit that question to the jury.

Appellant's last contention for a reversal is that the verdict in favor of appellee was excessive. We have set out above the injuries received by appellee and the extent thereof according to his testimony and that of the physician who carefully examined him and who has treated him. We see no necessity of setting this testimony out again further than to say the amount recovered was commensurate with the extent of the injuries received by appellee when taken in connection with the pain and suffering he endured and must endure, the amount recovered does not indicate that it was the result of passion or prejudice on the part of the jury. There is no question that his earning capacity has been decreased on account of the injuries. Appellant introduced no testimony as to the extent of the injuries. It did not ask that he submit himself to an examination so the evidence stands in the record practically undisputed that the injuries justified the amount recovered by appellee.

No error appearing, the judgment is affirmed.

Griffin Smith, C. J., and Holt, J., dissent.