Missouri Pacific Railroad Company, Thompson,
Trustee, *v.* Kagy.

4-6060 143 S. W. 2d 1095

Opinion delivered October 21, 1940.

*Thomas B. Pryor, David R. Boatright* and *W. L. Curtis,* for appellant.

*Partain & Agee,* for appellee.

Mehaffy, J. This action was instituted by appellee
against the appellant in the Crawford circuit court for
personal injuries alleged to have been caused by the
negligence of appellant. The appellee alleged in his com-
plaint that he was traveling in an automobile and ap-
proached and came to the crossing of the public road on
which he was driving, and that while he was himself in
the exercise of due care for his own safety, he was in-
jured by the carelessness and negligence of appellant, his
servants, agents, and employees; he alleged that the
crossing of said road and railroad was very rough and in

very bad condition; this was well known to the appellant, but that he carelessly and negligently constructed the same in such rough, uneven, bad and dangerous condition and negligently and carelessly maintained and kept it in such condition, and carelessly and negligently permitted and allowed such condition to continue, so that when appellee started across the track the said rough, uneven, bad and dangerous condition of said crossing, caused his automobile, which he was driving, to leave the road, run off the same on the right side, and hit a post and to cause appellee to be seriously and permanently injured; that his said injuries were caused by the acts of negligence, operating singly and together, and that his bones, flesh, muscles, tendons, vertebrae and ligaments in and about his neck, back, spine and spinal column were fractured, twisted, injured and torn, his entire nervous system shocked and injured, and that he was injured internally and his entire body bruised and injured.

The appellant filed answer denying each and every material allegation in the complaint and alleging that if the appellee were injured as alleged, it was wholly the result of lack of ordinary care and prudence on the part of appellee in the operation of his car, and, therefore, resulted from his own negligence.

There was a trial and verdict and judgment in the sum of $1,200 for appellee. The case is here on appeal.

The appellee testified in substance that he lived in Van Buren and had lived there most of the time since 1892; has been engaged during the last few years as an automobile mechanic; was working for the Crawford County Motor Company at the time of his injury; he is now a carpenter's helper; on the date he was injured, he was driving a 1935 Ford coupe about three o'clock in the afternoon; he was on the Kibler road; he never drives fast, and was going about 15 or 18 miles an hour and slowed up a bit before he got to the crossing; he did not stop when he hit the crossing; the car seemed to bounce pretty high and he lost control of it; it jerked the wheel out of his hand when he was on the railroad crossing; it

had been three or four months since he had been out that way; when he lost control of his car, it happened so quickly that he could not tell much about it; he realized that he was down in a ditch and the automobile had hit an iron post about 25 feet from the crossing; his neck was hurt badly and he was sick at the stomach; was semi-conscious all the time and the first that he realized he looked up and saw Mr. Wid Greig, and Mr. Greig brought him to town; Greig and appellee's wife put him to bed; did not call a doctor until the next morning; next morning he called Dr. Stewart whom he has learned is the surgeon for the Missouri Pacific Railroad Company; he treated him two or three weeks, probably a month; he was pretty sick for several days; the doctor examined his back and neck; he stayed in bed all the rest of the month; since his injury he has worked on the WPA, as a carpenter's helper; he cannot do any lifting; he was off his job a month; at that time he was receiving $40.10 a month; does not know the amount of his doctor's bill; he is 52 years old; the Kibler road on which he was driving is one of the established roads; would be difficult to tell how many times a year he crossed at that crossing; there have been several years that he has not been over it at all; the crossing is on a curve; he did not know that the outside rail was higher than the inside rail on a curve; never worked on a railroad and did not know that was the way they constructed the track on a curve; he did not notice that the east rail was higher than the main line; he was going along there, and he supposed the track was all right to cross at the speed he was going; he was not exceeding 20 miles an hour; is not familiar with traffic on that highway; he had not been over it in some time; it was in fairly good shape when he was over it; he was physically able to do a hard day's work before the accident; it was several days after the accident before he brought suit; he is an experienced driver, has had a good deal of experience; the condition of the car he was driving was fair.

There was other evidence as to the condition of the crossing, and Dr. Stewart testified about appellee's condition. Dr. Stewart testified that he had known appel-

lee for 14 or 15 years; and has been his family physician part of that time; when called to see him he found him in bed complaining bitterly with the back of his head and neck; all symptoms were subjective, no objective symptoms; he gave appellee medicine to relieve the pain; had X-rays made of his neck; he did not make the pictures himself; does not recall the amount of his bill.

There was substantial evidence that the railroad crossing was in dangerous condition because of the negligence of the appellant.

In the case of *Missouri Pacific Railroad Company* v. *Sorrells,* 199 Ark. 971, 136 S. W. 2d 1035, this court said: "In the case of *St. Louis, Iron Mountain & Southern Railway Co.* v. *Smith,* 118 Ark. 72, 175 S. W. 415, this court laid down the duty of railroad companies operating in this state relative to maintaining its crossings over public highways and quoted as follows from American & English Enc. of Law (2 ed.), vol. 8, p. 363:

" 'It is the duty of every railroad company properly to construct and maintain crossings over all public highways on the line of its road in such manner that the same shall be safe and convenient to travelers, so far as it can do so without interfering with the safe operation of the road.

" 'The duty of the railroad to construct and maintain crossings over public highways is a matter usually regulated by statutory enactment. And a failure to regard such statutory requirements will render the railroad liable for all injuries fom such neglect of duty.' "

It is the contention of the appellant that the appellee failed to make out a case, and that, therefore, his instruction for a directed verdict for the appellant should have been given. He calls attention first to the case of *Mo. Pac. Rd. Co.* v. *Wright,* 197 Ark. 933, 126 S. W. 2d 609. The facts in that case are wholly different from the facts in this case. In that case the court said that appellee's car was going 40 miles per hour; the evidence showed 45 or 50. There was a highway sign in Hoxie fixing the speed limit at 25 miles an hour, and a city ordinance to

that effect, and yet the appellee was violating the ordinance and driving 40 miles an hour. It is also stated in that case that the crossing was constructed in conformity with the act of February 25, 1913, Acts 1913, p. 328, and was in that condition at the date of the accident, and it was conceded by the parties that a thousand cars passed the crossing where the accident occurred daily. Appellee Wright was a resident of Hoxie. The court also said in that case: "Under the facts in this case we think it just as probable that the manner in which appellee was driving his car at the time of the accident was the proximate cause of the wreck and consequent damages as that a defect in the crossing might have been the cause."

In the instant case several witnesses testified that the crossing was in bad condition. Whether the appellant was guilty of negligence was a question of fact for the jury.

"The rule is that where fair-minded men might differ honestly as to the conclusion to be drawn from the facts, either controverted or uncontroverted, the question should go to the jury, and it is the province of the jury to pass on the weight of the evidence and the credibility of the witnesses, and, even if it appears that the verdict is contrary to the preponderance of the testimony, this furnishes no ground for reversal." *Miss. River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. 2d 255; *Armour & Co.* v. *Rose,* 183 Ark. 413, 36 S. W. 2d 70; *Ark. P. & L. Co.* v. *Cates,* 180 Ark. 1003, 24 S. W. 2d 846; *Hyatt* v. *Wiggins,* 178 Ark. 1085, 13 S. W. 2d 301; *Mo. Pac. Rd. Co.* v. *Juneau,* 178 Ark. 417, 10 S. W. 2d 867; *S. W. Bell Tel. Co.* v. *McAdoo,* 178 Ark. 111, 10 S. W. 2d 503; *Harris* v. *Ray,* 107 Ark. 281, 154 S. W. 499.

It is next contended by appellant that the verdict is excessive. A majority of the court has reached the conclusion that the evidence will not sustain a verdict for more than $600. If the appellee will, within fifteen days, file a remittitur for $600 the judgment will be affirmed; otherwise it will be reversed, and the cause remanded for a new trial.