M. E. McGREW v. GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—No. 38483.—184 S. W. (2d) 994.

Division Two, January 2, 1945.

Rehearing Denied or Motion to Transfer to Banc Overruled, February 5, 1945.

*Thos. J. Cole* and *McReynolds & Flanigan* for appellant.

*Partain & Agee, Lyman L. Mikel, Kelsey Norman* and *Henry Warten* for respondent.

858

BOHLING, C.—Miles E. McGrew instituted this action to recover damages for personal injuries allegedly occasioned by a defective and unsafe railroad-highway grade intersection causing the automobile he was operating to overturn. A ten-juror verdict was returned for $10,000. Judgment followed and Guy A. Thompson, as Trustee for the Missouri Pacific Railroad Company, appealed. He claims error in the submission of plaintiff's cause; in the giving of plaintiff's instruction No. 1, and that a new trial should have been granted because the verdict was against the overwhelming weight of the evidence. The accident happened near Van Buren, Arkansas.

The contention that no case was made is based upon the proposition that under the Arkansas law plaintiff was guilty of contributory negligence as a matter of law; viz. (quoting): "Every man who has had the slightest experience in riding in or driving motor cars knows that a car proceeding at 12 miles an hour, striking an obstacle and

proceeding onward at about the same speed for 400 feet in a sandy ditch and climbing a bank, does not, in the last 15 feet of its course, pick up enough speed to overturn itself in a somersault, flipping over on its top." The railroad raises no issue respecting actionable negligence. The pertinent facts follow:

Plaintiff's case in the respect questioned rests upon two witnesses, himself and his companion, Vernie H. LaGrand. Plaintiff was operating a maroon 4-door Pontiac sedan. It had just been overhauled, was in good working condition, and was taken on this trip to "break it in" and to look for used automobiles for sale. They were returning, proceeding west, about noon on March 25, 1940, over the Kibler highway, a gravel and dirt highway east of Van Buren. The accident occurred at defendant's railroad intersection with the highway near the Eagle-Picher Smelter. The Kibler highway, for one proceeding west in the vicinity of the intersection, goes down a steep hill, not a very long hill, sort of like a "shoot-the-shoot" and then across the Flatrock creek bridge, which is about a quarter mile east of the railroad intersection. The highway is practically level from the bridge to the intersection, there being a very slight dip in the highway. Photographs and the physical facts established confirm the oral testimony that the highway is practically level from just west of the bridge to the intersection. Two railroad tracks intersect the highway—a main line track on the east and a switch track to the smelter on the west. The east rail of the main track and the west rail of the switch track are from 19 to 20 feet apart. The railroad tracks are on a curve, calling for the east rails to be higher than the west rails to prevent derailments; the same principle that calls for banking the outside of an automobile highway curve. The east rail of each track was a little less than 6 inches higher than the west rail of the respective track, the east rail of the main line track being between (nearer) 11½ and 12 inches higher than the west rail of the switch track. As to the general condition of the crossing, plaintiff's brief states that the highway west of the tracks was from 12 to 24 inches below the grade of the highway east of the tracks; that the grade of the highway (say 2 or 3 feet) east of the track was between 6 and 12 inches higher than the level of the east tracks, causing west-bound traffic to proceed downgrade across the tracks and then level off on the highway west of the track. The highway immediately east of the tracks had been raised and properly drained to eliminate a "mud hole" that developed after every rain. The testimony established that the crossing was in bad condition; for instance, that between the rails were chug holes and the railroad crossing planks were broken, loose, and uneven. On the north side of the highway, west of the railroad track, was a high embankment, higher than the top of an automobile, 10 or 12 feet high. On the south side of the highway

was a pasture, about 3 or 4 feet below the level of the highway, there being a gradual slope from the highway to the pasture.

Neither plaintiff nor his companion was familiar with this crossing. LaGrand testified that they traveled about 30 miles while plaintiff put the speed between 20 and 30, not over 35, miles an hour prior to reaching the "shoot-the-shoot" hill. When within about 300 feet of the crossing, LaGrand told plaintiff: "Here, is a railroad crossing"; and plaintiff slowed the speed of the Pontiac and hit the crossing at a speed of 12 (according to LaGrand) or 15 to 18 (according to plaintiff) miles an hour. Plaintiff testified he could not tell what happened after the Pontiac went upon the crossing stating he received a "lick" on his left jaw and everything went dark. The next he remembers was being in the hospital. LaGrand had previously suffered the loss of his left arm above the elbow. Quoting and paraphrasing his testimony: When the Pontiac went upon the crossing, Plaintiff's head hit the glass on the door and plaintiff was "knocked out cold." He tried to bring plaintiff to. The jolt did not kill the engine or knock the car out of gear. The car remained in gear until it turned over. The Pontiac just bounced in there and out and back and went in toward a high embankment on the north side of the highway, and swerved right up into this embankment and rolled up there, turned, and went down. One of plaintiff's arms was over on the steering wheel and witness could not handle plaintiff with one hand. After the car hit the embankment it turned back and went off the other side of the road into the pasture, turning over. The embankment all along there is 10 or 12 feet high, higher than the top of an automobile. There is supposed to be a ditch before the embankment, but it is sandy there and the ditch fills up. The automobile came upon the crossing at 12 miles an hour. It ran into the sandy ditch and eased into the embankment for 300 to 400 feet. It then went back across the road to the south, down the gradual 3 or 4 foot slope, hit the fence post, turned over end for end, stopping upside down 25, maybe 30, feet south of the south highway line and 500 feet west of the railroad-highway intersection. The car did not pick up any speed until it went down the 3 or 4 foot slope on the south side of the highway. It then ran about 15 feet until it hit the fence post. It could not have picked up much speed "but enough to turn it over." "Q. Your car didn't pick up any speed from the time it hit the railroad track until it turned over? A. It may have picked up a little. It come over that road and run over the embankment. It probably picked up speed after it went over the embankment. Q. How far did it run after it went over the embankment? A. Until it hit the post and turned over. Q. It didn't run over 15 feet? A. No, sir. Q. It couldn't have picked up very much speed in 15 feet? A. No, sir; but enough to turn it over." The witness also had sued defendant on account of the accident.

Without going into detail, defendant's evidence established by disinterested witnesses that plaintiff was operating the automobile at an excessive and negligent rate of speed and that his injuries were directly contributed to by said negligent speed.

■ We have quoted hereinbefore the factual feature stressed by defendant in presenting the issue of plaintiff's contributory ■ negligence as a matter of law. We agree that it is contrary to the physical facts for an automobile proceeding at a speed of 12 miles an hour to do the things plaintiff's evidence purports to establish that the automobile did in the circumstances of the instant case. See Sirounian v. Terminal Rd. Ass'n., 236 Mo. App. 938, 945, 160 S. W. 2d 451, 454[3-7]; Ziegelmeier v. East St. L. & Sub. Ry. Co., 330 Mo. 1013, 1019, 51 S. W. 2d 1027, 1030[7]. However, the fact that the things the automobile did may establish its speed to have been in excess of 12 (or even 15 or 18) miles an hour does not conclusively establish that its speed was a negligent speed as a matter of law and defendant's presentation falls short of discharging the burden resting upon it of establishing reversible error. The issue calls for a detailed development of the physical facts.

■ We are of opinion the cause should be remanded for error in plaintiff's main instruction, and defendant's point (citing King v. Kansas City Life Ins. Co. (Banc), 350 Mo. 75, 87, 164 S. W. 2d 458, 464[8, 9], based on plaintiff's verdict being against the weight of the evidence need not be discussed. For cases on the duty of trial courts to weigh the evidence see Ziegelmeier v. East St. L. & Sub. Ry. Co., supra, and McCarty v. St. Louis Transit Co., 192 Mo. 396, 401, 91 S. W. 132, 133, among others.

The railroad claims error because plaintiff's verdict-directing instruction failed to require the jury to find that the railroad knew (actually or constructively) of the defective condition of the crossing in time to have remedied the defect, all in the exercise of due care. The instruction did not so predicate a plaintiff's verdict; and plaintiff's answer is that the railroad cannot complain "because defendant joined plaintiff in plaintiff's theory of the case at the trial and cannot now change his theory."

We understand the Arkansas law, like that of most states, conditions a recovery in like causes of action upon defendant's knowledge of the defect in time to have duly remedied the situation. In Missouri Pac. Rd. Co. v. Hare, 194 Ark. 441, 108 S. W. 2d 577, 578[2], the court said: "We think this evidence sufficient to take the question of negligence to the jury, as we cannot say there is no substantial evidence the crossing was in bad repair and the appellant did know it, or by the exercise of ordinary care could have known it. St. Louis & S. F. Ry. Co. v. Dyer, 87 Ark. 531, 113 S. W. 49, 50." Liddle v. Thompson, 236 Mo. App. 1071, 1080, 162 S. W. 2d 614, 619[5], stated: "To recover for negligent maintenance of a crossing it must

be alleged and proved that the defendant either had actual or constructive notice of the defect within time to make repairs before the time of an accident alleged to have been occasioned thereby.'' Under our rules of pleading and practice it would follow that a plaintiff's verdict-directing instruction should include the findings that defendant had notice of and time in which to remedy the defect. Nixon v. Hannibal & St. J. Rd. Co., 141 Mo. 425, 437(II), 42 S. W. 942, 944(2). Consult also 45 C. J. 659, 660, 661; 40 C. J. S., p. 312; 25 Am. Jur., p. 653, Sec. 361; 44 Am. Jur., p. 735, Sec. 496; Kroger Grocery & Baking Co. v. Dempsey, 201 Ark. 71, 143 S. W. 2d 564[2]; Smith v. Sears, Roebuck & Co. (Mo. App.), 117 S. W. 2d 658, 661[4]. Plaintiff's cited cases (Missouri Pac. Rd. Co. v. Kagy, 201 Ark. 150, 143 S. W. 2d 1095; Missouri Pac. Rd. Co. v. Wright, 197 Ark. .933, 943, 126 S. W. 2d 609, 613) did not have this issue for determination; and the Wright opinion stated in holding plaintiff failed to make a case: ''Unless we are going to hold that the appellant is an insurer there can be no recovery in this case.'' Liability in Arkansas attaches by reason of neglect; and a recovery by plaintiff required findings that the crossing was defective and that defendant had knowledge (actual or constructive) thereof in time to have remedied the defect.

The basic principle underlying the plaintiff's contention is that a case is heard on review on the same theory it was tried nisi. The rule is applicable to many situations, such as where a plaintiff and defendant jointly and voluntarily try their case on a given theory or, and more to the foundation of the rule, where a litigant invites and induces the court and his adversary to proceed on an erroneous theory of the law he may not thereafter complain of said error. A plaintiff, as well as defendant, is bound by his trial theory; and plaintiff's point seeks the facts of the instant case:

Plaintiff's petition charged defendant with negligence in keeping and maintaining the crossing in an unsafe condition, ''all of which the defendant knew, or, by the exercise of ordinary care on its part, could have known in time, by the exercise ■■■■ of ordinary care on its part, to have remedied and repaired the dangerous and unsafe condition of said highway, but that the said defendant carelessly and negligently failed to do so.'' Defendant's answer included a general denial, which made the factual issues of notice and time to repair constitutive elements of plaintiff's case. Plaintiff offered evidence to support a finding that defendant had ample notice and time to repair. Also to establish that the condition of the crossing had not been improved after an accident a few months prior to one Kagy. This latter proof came in, over defendant's objections with due exception saved, on the theory, as stated to the court by counsel for plaintiff, that it was offered for the purpose of ''charging the railroad with notice for a'

sufficient length of time for them to have exercised ordinary care to put it in condition.'' The evidence with respect to Kagy having an accident at the crossing was not suppressed by plaintiff's counsel. Plaintiff applied to defendant this evidentiary whip of notice in time to repair with stinging effect. He should be held to his trial theory upon which the evidence was admitted and not be permitted to blow hot and cold nisi—securing the admission of evidence establishing a constitutive element of his case and damaging to defendant and then relieving himself of the burden of requiring the jury to find the truth of the essential facts thus offered.

Plaintiff cites the cases of Torrance v. Pryor (Mo. Div. 1), 210 S. W. 430, 432[4], and dictum in Sabol v. St. Louis Cooperage Co. (Div. 1), 313 Mo. 527, 550, 282 S. W. 425, 433, in a quotation from Armstrong v. Scullin Steel Co. (Mo. App.), 268 S. W. 386, and others. Their holding as well as holdings of other cases to the effect that a defendant offering a general demurrer and no separate withdrawal instructions waives his demurrer by offering converse instructions on the issues submitted, stand overruled by later decisions. Elkin v. St. Louis Pub. Serv. Co., 335 Mo. 951, 954, 74 S. W. 2d 600, 601; Guthrie v. City of St. Charles (Banc), 347 Mo. 1175, 1183, 152 S. W. 2d 91, 94; Klotsch v. P. F. Collier & Son Corp. (Banc), 349 Mo. 40, 50, 159 S. W. 2d 589, 595. The Klotsch case states that the principle ''only applies to situations where the defendant joins in the error without coercion.'' See also Williams v. St. Louis Pub. Serv. Co., 335 Mo. 335, 341[2], 73 S. W. 2d 199, 201[3].

Plaintiff had the affirmative and the burden of establishing the constitutive factual issues of a defective crossing and due notice to and due opportunity on the part of defendant to repair. These were facts essential to plaintiff's case. They were not affirmative defenses. Defendant had only the negative on these issues if it desired to offer evidence thereon. Defendant, in addition to what has been mentioned heretofore, objected to the giving of the questioned instruction and saved an exception to the adverse ruling. Defendant was entitled to defeat plaintiff's action (aside from any available affirmative defenses) if the jury believed that either the crossing was not defective or, if defective, that defendant had not had knowledge (actual or constructive) of the defective condition in due time to remedy the defect. Defendant, having two legal negative factual defenses, had the right to submit the negative of the constitutive element of plaintiff's case with respect to the defective condition of the crossing and defeat plaintiff's recovery without, if defendant so choose in the circumstances before us, submitting the negative of the constitutive element of due knowledge in due time to repair and still hold plaintiff to his burden of establishing all the essential elements of his cause of action. Carpenter v. Kurn, 345 Mo. 877, 894[5], 136 S. W. 2d 997, 1006[10-12]. Speaking to the omission of essential factual elements

from an instruction directing a verdict for plaintiff, Delfosse v. United Rys. Co. (Mo.), 201 S. W. 860, 863[7], states: "Nor can this fatal defect in such an instruction be cured by any other instruction in the case." Consult also, among others, State ex rel. v. Ellison (Banc), 272 Mo. 571, 581(III), 199 S. W. 984, 987[4]; State ex rel. v. Shain, 341 Mo. 733, 739, 740, 108 S. W. 2d 351, 354, 355; Kenefick-Hammond Co. v. Norwich Union F. Ins. Co., 205 Mo. 294, 307(I, a, b, c), 103 S. W. 957, 960(I, a, b, c); State ex rel. v. Shain, 344 Mo. 404, 409, 126 S. W. 2d 1193, 1195[1]; Mount Vernon C. Mfg. Co. v. Hirsch R. M. Co., 285 Mo. 669, 694(III), 227 S. W. 67, 74[6, 7]; Connole v. East St. L. & S. Ry. Co., 340 Mo. 690, 704(2), 102 S. W. 2d 581, 589[19].

Millhouser v. Kansas City Pub. Serv. Co., 331 Mo. 933, 940[4], 55 S. W. 2d 673, 676[9], states the rule contended for by plaintiff is to be applied with discretion and refused to apply it against a ▬ plaintiff at the request of a defendant. If the instant case were a proper instance to invoke the rule, an exercise of discretion, more so than in the Millhouser case, would necessitate overruling plaintiff's contention because to hold defendant waived the issue would permit the litigant offending to the greater extent by far against the rule invoked to reap the benefit.

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Tipton, J.,* and *Leedy, P. J.,* concur; *Ellison, J.,* absent.